Wayne WICKS *v.* STATE of Arkansas

CR 79-194                           606 S.W. 2d 366
Supreme Court of Arkansas
Opinion delivered October 20, 1980

*Robert A. Newcomb*, for appellant.

*Steve Clark*, Atty. Gen., by: *James F. Dowden*, Asst. Atty. Gen., for appellee.

GEORGE ROSE SMITH, Justice. By an information containing two counts the appellant was charged with having raped the same woman twice, once on August 17 and again on September 26, 1978. The prosecutrix testified to both occurrences, but the court, without objection, submitted only a verdict form permitting the jury to find the defendant guilty of rape, rather than of two separate offenses. The jury found Wicks guilty and fixed the punishment at life imprisonment. We find no merit in the six points that are argued, nor any other reversible error.

The prosecutrix testified that she did not know Wicks before the incidents and did not learn his identity with certainty until just before the information was filed in December, 1978. Both incidents occurred after she had gone to bed at night. In both instances the intruder found her in bed after gaining entrance into the house. The prosecutrix said that immediately after the first rape she talked with her assailant for about 20 minutes on her front porch, where she sat facing a street light. There was also a full moon. She was positive in her identification. She discussed the incident with her married daughter and with a fellow employee where she worked, both of whom testified, but she did not report either offense to the police until about two weeks after the second one, when certain damage to her screens led her to suspect that still a third attempt to enter her house had been made.

First, it is argued that the imposition of a life sentence in this case was a denial of due process of law, because the case was submitted to the jury without any guidelines to help the jury in its deliberations. On this point Wicks relies on the decision of the district court in *Rogers* v. *Britton*, 476 F. Supp. 1036 (E.D. Ark., 1979), holding that such guidelines are essential. That decision, however, was reversed earlier this month, after the case at bar had been fully briefed and submitted for our decision. *Britton* v. *Rogers*, 631 F. 2d 572 (8th

Cir., 1980). The Court of Appeals held that guidelines are required only in capital cases.

Inasmuch as the *Rogers* case may yet be carried to the Supreme Court, we need only say in disposing of the present case that we adhere to our view that such guidelines are unnecessary except in capital cases. *Shepherd* v. *State*, 270 Ark. 457, 605 S.W. 2d 414 (1980); *Rogers* v. *State*, 265 Ark. 945, 582 S.W. 2d 7 (1979). It is the finality of a death sentence that makes capital cases unique. A life sentence has no similar irrevocability. If guidelines were mandatory in life sentence cases, it would be only the shortest of steps to extend the requirement to a sentence of, say, 50 years. Beyond that there is no reasonable stopping place. Moreover, a jury hardly needs to be told about matters that it would inevitably consider anyway, such as the defendant's youth or his mental condition or his past criminal record. Such matters are ordinarily emphasized by counsel in their closing arguments. The common law approach has been to allow juries, representing the common sense of the community, to impose punishment on a case by case basis. We are unwilling to say that for centuries common law jury trials have been a continuing denial of due process of law. Unless the Supreme Court so holds we do not think it proper for us to take that view.

Second, it is argued that the evidence does not support the verdict, for the reason that no rational person could find Wicks guilty beyond a reasonable doubt. The proof, however, simply presented a question of fact for the jury. Wicks flatly denied the charges and sought to show by other witnesses that he was elsewhere at the time of each offense. The charges, however, were not filed until some three months after the second incident, Wicks's identity not being known. After that lapse of time both Wicks and his witnesses were understandably handicapped in trying to pinpoint his whereabouts on either night. It cannot be said that the proof shows conclusively that Wicks could not have committed either crime. Thus the issue was for the jury.

Third, it is insisted that the trial judge should have granted a motion for a mistrial after the following testimony by the prosecutrix on direct examination:

Q. Have you told anybody else about the rape, other than the police and your daughter?

A. Well, my boss knows why I'm here.

Q. I mean before you reported it?

A. No. I told him what I had to leave for when I went to Little Rock, for my polygraph test.

After a discussion in chambers, with defense counsel candidly conceding that the remark was spontaneous and not planned, the court denied the motion for a mistrial and promptly instructed the jury to disregard the statement about a polygraph test. We perceive no error. True, the result of a polygraph test is ordinarily not admissible, but it does not follow that every reference to such a test calls for a mistrial, any more than that is so when the court instructs the jury to disregard a statement based on hearsay. A mistrial is such a drastic measure that it is warranted only if justice could not be served by going on with the trial. *Foots* v. *State*, 258 Ark. 507, 528 S.W. 2d 135 (1975). Here we hold that the admonition to the jury was a sufficient corrective.

Fourth, after the entry of judgment the court, after an evidentiary hearing, denied a motion for a new trial. The court reporter states under oath in a supplemental transcript that the case was reported by another reporter and that the notes for the post-trial hearing "are illegible and cannot be transcribed." The appellant, without even asserting that the motion for a new trial had merit, asks that the case be remanded for a reconstruction of the record or a new hearing.

The request must be denied, for the appellant is ignoring established procedure. He has the burden of supplying a transcript of the proceedings below. *Graham* v. *State*, 264 Ark. 489, 572 S.W. 2d 385 (1978). That burden includes responsibility for obtaining a transcript or its reconstruction. *Graham* v. *State*, 264 Ark. 804, 575 S.W. 2d 149 (1979). The correct procedure to obtain what used to be called a bystander's bill of exceptions is specified in detail in Appellate Procedure Rule 6 (d) (1979). The appellant has apparently made no effort to pursue his available remedy and is not entitled to different relief.

Fifth and sixth, the appellant argues that the court should not have excused a juror who wavered about his ability to impose life imprisonment for rape and that the court erred in submitting a single offense to the jury when both the information and the State's proof charged two offenses. We are considering these two points together, because they are both defective in not being supported by an objection in the trial court.

It is apparent at the outset that trial counsel may have deliberately chosen not to object in both instances. That is, counsel may have had a reason for not wanting the juror in question and may understandably have thought it better for his client to face one possible conviction for rape rather than two. We prefer, however, to stress the absence of any objection in the trial court, because arguments for a reversal without a supporting objection are being made with increasing frequency, especially when, as in this case and in appeals briefed by the State Appellate Public Defender, counsel on appeal were not also counsel in the trial court. We think it best to make our position clear.

Some courts, especially the federal courts, have a "plain error" rule, under which plain errors affecting substantial rights may be noticed although they were not brought to the attention of the trial court. Federal Rules of Criminal Procedure, Rule 52 (b); *State* v. *Meiers*, 412 S.W. 2d 478 (Mo., 1967). In Arkansas, however, we do not have such a rule. *Smith* v. *State*, 268 Ark. 282, 595 S.W. 2d 671 (1980). To the contrary, in hundreds of cases we have reiterated our fundamental rule that an argument for reversal will not be considered in the absence of an appropriate objection in the trial court. Citations to that familiar principle are unnecessary.

Exceptions to the basic requirement of an objection in the trial court are so rare that they may be reviewed quickly. In two cases in which the death penalty was imposed, we did not require an objection to the trial court's failure to bring to the jury's attention a matter essential to its consideration of the death penalty itself. In the earlier case the court failed to require the jury to find the degree of the crime, as required by the statute, so that the jury might have imposed the death

penalty for a homicide below first-degree murder. *Wells* v. *State*, 193 Ark. 1092, 104 S.W. 2d 451 (1937). In the later case the trial court apparently failed to tell the jury that it had the option of imposing a life sentence. *Smith* v. *State*, 205 Ark. 1075, 172 S.W. 2d 248 (1943).

A second exception arises when the error is made by the trial judge himself at a time when defense counsel has no knowledge of the error and hence no opportunity to object. *Spears* v. *State*, 264 Ark. 83, 568 S.W. 2d 492 (1978), where defense counsel did not see an erroneous form for the verdict. Also *Bush* v. *State*, 261 Ark. 577, 550 S.W. 2d 175 (1977), and *Bell* v. *State*, 223 Ark. 304, 265 S.W. 2d 709 (1954), in both of which the judge entered the jury room without the knowledge of defense counsel. (Criminal Procedure Rule 36.21 [1976] embodies the general principle.)

A third exception is a mere possibility, for it has not yet occurred in any case. That relates to the trial court's duty to intervene, without an objection, and correct a serious error either by an admonition to the jury or by ordering a mistrial. We implied in *Wilson* v. *State*, 126 Ark. 354, 190 S.W. 441 (1916), that no objection is necessary if the trial court fails to control a prosecutor's closing argument and allows him to go too far: "Appellant can not predicate error upon the failure of the court to make a ruling that he did not at the time ask the court to make, unless the remarks were so flagrant and so highly prejudicial in character as to make it the duty of the court on its own motion to have instructed the jury not to consider the same. See *Kansas City So. Ry. Co.* v. *Murphy*, 74 Ark. 256 [85 S.W. 428 (1905)]; *Harding* v. *State*, 94 Ark. 65 [126 S.W. 90 (1910)]."

It must be noted that, first, we did not reverse the judgment in *Wilson*, and second, the quoted statement was taken essentially from the cited *Murphy* case, where we went on to say explicitly that if the court fails to restrain an improper argument, counsel should make a definite objection and call for a ruling. We have mentioned the *Wilson* suggestion in two recent cases, but in neither one was the judgment actually reversed because of the trial court's failure to act on its own motion. *Ply* v. *State*, 270 Ark. 554, 606 S.W. 2d 556

(1980); *Wilson and Dancy* v. *State*, 261 Ark. 820, 552 S.W. 2d 223 (1977). Thus every statement of the original *Wilson* suggestion has been obiter dictum, because no judgment has been reversed on account of the trial court's failure to intervene. Such a reversal would necessarily be an extremely rare exception to our basic rule. In the case at bar, obviously the trial judge might not have excused the juror and might have submitted a different verdict form if objections had been made.

A fourth possible exception might arguably be asserted on the basis of Uniform Evidence Rule 103 (d): "Nothing in this rule precludes taking notice of errors affecting substantial rights although they were not brought to the attention of the court." Ark. Stat. Ann. § 28-1001 (Repl. 1979). That statement, however, is negative, not imposing an affirmative duty, and at most applies only to a ruling which admits or excludes evidence. If there is any other exception to our general rule that an objection must be made in the trial court, we have not found it in our review of our case law. Quite obviously the two arguments now under consideration do not fall within the scope of any recognized exception to the rule.

In closing, we mention a position sometimes taken in appellate briefs in criminal cases, that a possible error should be argued by counsel even in the absence of an objection below, because the matter might be raised in a petition for postconviction relief. The short answer to that suggestion is that if the supposed error actually calls for postconviction relief, the defect is not cured by the presentation of an argument that is certain to be rejected by this court for want of an objection at the trial. Nevertheless, if counsel insist upon consuming their time and that of the court in making such an unsupported argument, the argument should be preceded by a clear statement that no appropriate objection was made below and that the point is being presented despite that omission.

Affirmed.

MAYS, J., concurs.