2013 Ark. App. 215

**Lawrence MAHOMES, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 12–549.**

Court of Appeals of Arkansas.

April 3, 2013.

Paul J. Teufel, for appellant.

Dustin McDaniel, Att'y Gen., by Pamela A. Rumpz, Ass't Att'y Gen., for appellee.

RITA W. GRUBER, Judge.

Lawrence Mahomes appeals the revocation of his probation for two counts of possession of a controlled substance[1] He contends that the circuit court (1) erred in denying his motion for a directed verdict, (2) erred in denying his motion for a continuance, and (3) violated his Sixth Amendment right to confrontation by allowing hearsay statements to be admitted into evidence. We affirm.

The State alleged in its petition to revoke that appellant had committed new

---

1. Administrative Order Number 8(III), as amended by our supreme court's per curiam *In re Arkansas Supreme Court Admin. Order No. 8*, 2011 Ark. 544, requires the prosecutor to complete a *Sentencing Order* form, which then is submitted to the circuit judge for signature and filed in the circuit clerk's office. Ark. Sup.Ct. Admin. Order No. 8(III)(a) (2013). Instructions found on the Arkansas Judiciary website specify how to indicate dispositions involving probation and suspended imposition of sentence. *Sentencing Order Form Instructions*, https://courts.arkansas.gov/court-forms/criminal-divison (Sentencing Order Form Instructions—.pdf). The sentencing order is to indicate if the conviction is the result of a probation or SIS revocation, and the time imposed as a term of incarceration is not to include time for suspended imposition of sentence. *Id.*

At the conclusion of the revocation hearing, the circuit court orally announced that it was sentencing appellant to concurrent sentences of "ten years in the Arkansas Department of Correction with four years suspended." The term imposed in the ADC is incorrectly shown on the sentencing form as 120 months, but elsewhere the total time to be served is shown as 72 months. Furthermore, an amended sentencing form and a second amended sentencing form in this case do not reflect that the two convictions were the result of probation.

We do not find it necessary to remand for sentencing because the sentences were clearly within the sentencing range allowed in this case.

criminal acts, therefore violating the condition of his probation that he commit no offense punishable by imprisonment. At the revocation hearing, both the State and the defense presented evidence about a November 28, 2011 physical disturbance that occurred at appellant's residence, where he lived with his wife and daughter. The circuit court revoked probation at the hearing's conclusion. In its oral findings and a letter opinion, the court recited evidence that the court found proved by a preponderance of the evidence that appellant had committed the offense of domestic battery, an offense punishable by imprisonment.

### 1. *Sufficiency of Evidence to Revoke*

▆ In revocation proceedings, the burden is on the State to prove a violation of a condition by a preponderance of the evidence. *Dooly v. State,* 2010 Ark. App. 591, 377 S.W.3d 471. The State's burden of proof in a revocation proceeding is less than that required to convict in a criminal trial, and evidence that is insufficient for a conviction thus may be sufficient for a revocation. *Id.* In order to revoke a suspended sentence, the State need only prove one violation. *Id.*

▆ When the sufficiency of the evidence is challenged on appeal, we will not reverse the trial court's decision to revoke unless its findings are clearly against the preponderance of the evidence. *Id.* Because the determination of a preponderance of the evidence turns on questions of credibility and weight to be given testimony, we defer to the superior position of the trial court to decide these matters. *Id.* A motion for directed verdict is a challenge to the evidence supporting the revocation; such motions themselves are not necessary in revocation proceedings. *Smith v. State,* 2012 Ark. App. 613.

A person commits second-degree domestic battering under Arkansas Code Annotated section 5–26–304(a)(1) (Supp.2011) if "[w]ith the purpose of causing physical injury to a family or household member, the person causes serious physical injury to a family or household member." The State presented testimony by appellant's probation officer and by police officers who were dispatched by 911 to investigate the report of the altercation at appellant's home. Witnesses for the defense were appellant and his wife, Tracey Mahomes. Also introduced into evidence were written statements given by appellant's daughter and Tracey Mahomes to police on November 28, 2011, and two letters Tracey Mahomes had written in March 2012 asking that appellant's domestic-battering charge be dropped and denying that the incident had taken place.

Elizabeth Carter, appellant's probation officer, testified that she learned from the Morrilton Police Department that appellant had allegedly committed domestic battering. She also testified that appellant's wife, whom Carter did not know, personally delivered to Carter a statement or letter, which Carter did not read. The handwritten statement, which was introduced into evidence, is dated March 5, 2012. It reads as follows:

> I, Tracey Mahomes, would like to drop all the charges that was filed against Lawrence Mahomes. This includes domestic Battery II III. I would also like to remove the Order of Protection that is currently in place.

Officer Nathan Watkins and Sergeant Corporal James Kaufman of the Morrilton Police Department testified that on November 28, 2011, they were dispatched to a residence to investigate a physical altercation. Watkins testified that they were told by dispatch that the residents' daughter had gone next door and called the police.

Watkins described the following events and his observations.

Tracey Mahomes came to the door when Officer Watkins arrived. She was crying, was holding a rag to her ear, and said that she and appellant had been in a fight. Appellant seemed upset, was wearing no shirt, would not talk to Watkins, and wanted to leave. Watkins talked with Tracey Mahomes outside; she told him that appellant "jumped her from behind," hit her several times in the head, grabbed their daughter—who had intervened and tried to push appellant off her mother, and pushed the daughter against the wall. Watkins took written statements from the daughter and the mother, retrieved a cane the daughter said appellant had used in the altercation, and arrested appellant. While Watkins was putting appellant's hands behind his back, appellant—against instructions—kept tensing up; Watkins took him into custody and placed him in the patrol car after using "the arm-bar technique" to get him onto the ground. Watkins testified that Tracey Mahomes's ear "was basically cut in half" and that he "could see the ligaments [sic] inside."

Written statements that Officer Watkins took from the daughter and Tracey Mahomes on the day of the altercation were admitted into evidence without objection. Tracey Mahomes wrote that the couple were arguing; that the argument became physical, and he hit her first; that he also hit her "with an object" and injured her ear "very badly"; and that she wanted an order of protection. The daughter's written statement included the following:

My dad had my mom pinned to the ground punching her in the face repeatedly. I pushed him off and told him to stop. He then told me to go back into my room. I said no and he grabbed my neck and pushed me down. When I got back up he had my mom pinned onto the bed beating her with a cane. I then ran out of the house and to my neighbors to call the police.

Corporal Kaufman testified that Tracey Mahomes's ear was "cut on the top half" and that appellant was "agitated, anxious, and sweaty, like he had been engaged in . . . strenuous physical activity." Appellant kept saying he was "just trying to get out of here" and tried to leave through the door. Kaufman talked to the daughter, who was very upset; she told him that she had tried to get her father off her mother, that her father threw her against the wall, and that she ran to the neighbor's house to call the police.

Appellant testified in his own defense, denying that he hit his wife and explaining that he pushed their daughter to the side so that she would not get hurt. He said that his wife attacked him when the argument became physical, he tried to restrain her, and their daughter came in while they wrestled. He said that the couple fell to the floor and that he did not know if his wife's ear was cut in the fall or "while she was swinging that cane," which had a bungee cord and which she was "always swinging" at him. He believed that she "nicked" her ear when she was swinging the cane, which "wouldn't split an ear because when you swing it, it comes apart." He said that he tried to grab the cane each time she took a swing and that he cut his hand trying to catch the cord and wrestling the cane from her. Finally, he said that some charges resulting in his probation were "bogus"; he described feeling "backed in a corner with this crooked system"—with no options and unable to afford an attorney.

Tracey Mahomes also testified for the defense, explaining that she arrived in court at 1:00 p.m. rather than 9:00 a.m.— as she had been instructed—because she had been sick that morning. She said that

she and appellant were currently divorced and no longer lived together, but he still came by to check on his dogs and see if she needed anything. She explained that her reason for stating to police that appellant had attacked her was because she was "very mad at him at the time." She testified that she later asked the probation officer and the prosecutor to drop the battering charge because she hit appellant first. She testified that she would feel bad if he went to prison. She apologized to the court for lying and claimed she had told the police she did not know how her ear was injured. She denied that appellant had hit her with the cane but acknowledged being in a physical altercation with him, ending up with her ear cut, and being hit by him with something she could not identify.

■ The circuit court was presented with conflicting evidence on how Tracey Mahomes's ear was injured. The court found that appellant "did not come across as credible" and that his testimony was "evasive." The daughter's written statement—that appellant punched her mother's face repeatedly, pinned her onto the bed, and beat her with a cane—was found by the court to be very influential. From this evidence, along with the officers' descriptions of the cut to the victim's ear, we cannot say that the circuit court clearly erred in finding by a preponderance of the evidence that appellant committed domestic battering. Thus, the court properly revoked probation on a finding that appellant had violated the condition to commit no offense punishable by imprisonment.

### 2. Motion for Continuance

On the day of the April 4, 2012 revocation hearing, appellant stated pro se to the circuit court that neither he nor his attorney was "ready." He said that he did not consider his appointed counsel prepared but had not formally hired anyone. The public defender responded that he had received the case on February 15, 2012; he had received an affidavit from appellant's wife saying that she did not want to proceed with the charges; and there had been discovery "on all cases."

■ A trial court shall grant a continuance only upon a showing of good cause and shall take into account "not only the request or consent of the prosecuting attorney or defense counsel, but also the public interest in prompt disposition of the case." Ark. R.Crim. P. 27.3 (2012). The granting or denial of a motion for continuance is reviewed under an abuse-of-discretion standard; an appellant must not only demonstrate that the trial court abused its discretion but also show prejudice that amounts to a denial of justice. *Hayes v. State*, 2011 Ark. App. 79, 381 S.W.3d 117. When a motion for continuance is based on a lack of time to prepare, the reviewing court considers the totality of the circumstances. *Id.*

The trial court in the present case noted that arraignment was on December 13, 2011; the first hearing was set for February 1, 2012; the second one was to be March 7, 2012; and the April 4, 2012 date was the third. The court stated, "I understand Mr. Mahomes's position, but he has to do more than that. If he wanted to retain private counsel he had plenty of time to do so."

■ We agree with the State's position that absent a prompt disposition of this probation violation, it was entirely possible that another domestic altercation would have occurred or that Tracey Mahomes would have refused to testify, and it might have become impossible to hold appellant accountable. The revocation hearing had been reset twice, and the public defender received the case some seven weeks before

the hearing date, knew of Tracey Mahomes's recantation, and had discovery. We find no abuse of discretion in the circuit court's denial of appellant's pro se motion for continuance.

### 3. *Hearsay Testimony*

Appellant contends that the trial court violated his Sixth Amendment right to confront a witness against him by admitting and considering hearsay about what his daughter, who did not testify at the hearing, had told police. Her statement came in through both the testimony of Corporal Kaufman and through her purported written statement. The circuit wrote in its letter opinion that evidence of domestic battering was found from the cut on Tracey Mahomes's ear, her statement and the statement of her daughter, the testimony of Officer Watkins and Elizabeth Carter, and appellant's admission of a physical argument and the evasiveness of his testimony.

▉ Appellant admits that he did not raise his confrontation argument to the circuit court but contends that it is preserved for review because it falls within the third and fourth *Wicks* exceptions. *Wicks v. State*, 270 Ark. 781, 606 S.W.2d 366 (1980), presents four narrow exceptions, which are to be rarely applied to the contemporaneous-objection rule: (1) when the trial court in a death-penalty case fails to bring to the jury's attention a matter essential to its consideration of the death penalty; (2) when defense counsel has no knowledge of the error and thus no opportunity to object; (3) when the error is so flagrant and highly prejudicial in character that the trial court should intervene on its own motion to correct the error; and (4) when the admission or exclusion of evidence affects a defendant's substantial rights. *J.S. v. State*, 2009 Ark. App. 710, 372 S.W.3d 370.

In *White v. State*, 2012 Ark. 221, 408 S.W.3d 720, our supreme court refused to apply the *Wicks* exceptions to an alleged Confrontation Clause error. The *White* court held that the third *Wicks* exception—the trial court should have intervened on its own to correct a serious error—was limited to only those errors affecting the very structure of the criminal trial, which did not include the alleged Confrontation Clause error. The court also declined to apply the fourth *Wicks* exception—that the evidence affected the defendant's substantial rights—to a situation where, like here, there was a simple failure to make a contemporaneous objection at trial. *Id.*

▉ Even if it is assumed that the third and fourth *Wicks* exceptions apply in the present case and that the hearsay issue can be considered on appeal despite appellant's failure to contemporaneously object, any conclusion that a right of confrontation was violated is subject to a harmless-error analysis. *See id.* The testimony of Officer Watkins and Tracey Mahomes, the presence of the injury to her ear, and the testimony by appellant and Tracey Mahomes that their argument became physical provided an independent basis on which to revoke appellant's probation. Appellant therefore cannot show that prejudice resulted from the admission of his daughter's hearsay statement.

Affirmed.

VAUGHT and HIXSON, JJ., agree.