2014 Ark. App. 274
**Mauricio Antonio LOPEZ–
DELEON, Appellant**

v.

**STATE of Arkansas, Appellee.**

No. CR–13–622.

Court of Appeals of Arkansas.

April 30, 2014.

David O. Bowden, Little Rock, for appellant.

Dustin McDaniel, Att'y Gen., by: Kathryn Henry, Ass't Att'y Gen., for appellee.

WAYMOND M. BROWN, Judge.

Appellant appeals from his convictions for sexual assault in the second degree and residential burglary. On appeal, appellant argues that (1) there was insufficient evidence to convict him of either residential burglary or sexual assault in the second degree; and (2) pursuant to *Wicks v. State*,[1] errors were committed at trial that were of such a character as to affect his

1. 270 Ark. 781, 606 S.W.2d 366 (1980).

substantial rights to a fair process and to affect the structure of the trial such that the court should have raised the issue sua sponte, despite the lack of a contemporaneous objection at trial. We affirm.

On July 22, 2012, the appellant entered the home of a female neighbor. While there, the appellant fondled her while she was sleeping. The victim was awakened by the appellant's touching and told him to leave. The victim's minor son had been awake and lying next to her throughout the incident, although he pretended to be asleep. After she was sure that appellant had left the premises, she went to her mother's home across the street and called the police.

A criminal information was filed on August 29, 2012, charging the appellant with residential burglary and sexual assault in the second degree. The trial began on March 29, 2013.

The victim testified that she was married, but had a boyfriend as she and her husband were separated;[2] had lived in the same place since June 2009; and lived across the street from the appellant, who was her mother's neighbor. She stated that the appellant had been to her apartment "a couple of times" with mutual friends, but their relationship was "in passing" and not a "real friendship conversation type thing" as he "creeped [her] out."

The victim testified that she and her son were sleeping on a mattress in the living room on the morning of July 22, 2012. She advised that her daughter was spending the night across the street with her mother and that she left the back door unlocked so they could easily get into the apartment in the morning. She asserted that she woke up to the appellant touching her breast "over my clothes" and her vagina "under both the underwear and paja-mas." She said she yelled at him to "get the hell out my house"; that he left eventually; and that she then took her son to her mother's home and called 911 after she was sure he had left. When the police arrived, they took her report and she showed them where he had gone. She admitted that she did not know her son had seen anything until the next day. Finally, she stated that there was not a "situation of hanging about and drinking and come and go as you please" at her home.

After being questioned and found competent by the court, the victim's son testified that he was sleeping with his mom on the night of the incident when the appellant came into the apartment and touched his mom while she was sleeping. He stated that he was about to go get some water when the appellant entered the apartment, so he pretended he was asleep until the appellant left. He testified that his mother woke up when the appellant started touching her and told the appellant to get out though he did not remember her exact words. He initially stated that he had not seen the appellant before the night of the incident though he eventually admitted that he had.

Officer Billy Collins testified that he was dispatched on the night of the incident and found the victim "very shaky, crying and visibly upset." She had advised him that the appellant had run into an apartment. Officer Collins stated that he and another officer attempted to make contact with the appellant, but were not able to do so due to a language barrier between themselves and the man, not the appellant, who answered the door; they could not get consent to enter. He stated that they never made physical or verbal contact with the appellant, although they did see a scooter

---

**2.** The boyfriend was not home during the incident; he was in Colorado for work.

matching the victim's description in the apartment.[3] He testified that the victim "seemed very [believable] to me but you just never know."

Officer Mario Garcia testified that he spoke Spanish fluently; that about "thirty or forty percent" of his job was translating for fellow officers during interviews and out in the field; and that his translating in this case "was certainly not the first time." He testified that he accompanied Officer Torkelson to make contact at the appellant's apartment later on that day and that he assisted during the interview, both at the residence and at the police department, as a translator. He testified to his belief, after reviewing the audio of the interview, that his translation was accurate both as to questions and answers.

Officer Garcia then testified that the appellant told the officers that he had been with the victim prior to going to a bar where he became intoxicated. The appellant told Officer Garcia that he had left the bar when it closed and was heading back home, but had stopped at the victim's apartment upon noticing that the door was open. He admitted to the officers that he had let himself into the victim's home and told her "I need you." When questioned further, the appellant had explained that "I need you" meant he wanted to have sex with her.

He testified that the appellant had admitted that he and the victim were not on good terms, though he could not remember why, and mentioned that he had been in her home before though the number of times changed. He stated the appellant characterized his understanding of the victim as having a "loose reputation."

The State then rested, and the appellant moved to dismiss the case. The court denied the motion. For its case, the appellant put on one witness who was disclosed to the State by email at 9:20 pm on March 28, 2013. Maria Nieves–Parara, a friend of the appellant, testified that the appellant and the victim were friends and would get together more than once a week, mostly on weekends.[4] She testified that her husband had visited the victim the day before the trial to ask her to "look into her conscience and not say anything that wasn't true"; she denied that she or her husband had asked the victim to drop the charges. She stated that she had heard that the appellant and the victim were mad at each other though she didn't know if it was true. She asserted that the victim always leaves her door open, but averred that the appellant would have been wrong if he had entered the victim's house without her permission in the middle of the night. Finally she admitted that she could not say for certain whether anything happened or not between the victim and the appellant.

The appellant renewed his motion to dismiss; it was denied. The court then found the appellant guilty of residential burglary and sexual assault in the second degree, for which he was sentenced to ten years' and twenty years' imprisonment, respectively, in the Arkansas Department of Correction. This timely appeal followed.

## I. Sufficiency

Appellant's first argument is that there was insufficient evidence to support his conviction of either residential burglary or sexual assault. Before considering the merits of this point on appeal, this court

---

**3.** The victim had told the officers that she had seen the appellant pushing a scooter prior to their arrival.

**4.** Appellant's counsel had erroneously believed the witness's name was "Ms. Angel." She did not know "Ms. Angel's" first name.

must first determine whether the issue was properly preserved for appellate review.[5] Rule 33.1 of the Arkansas Rules of Criminal Procedure governs motions to dismiss in bench trials and provides in relevant part as follows:

(b) In a nonjury trial, if a motion for dismissal is to be made, it shall be made at the close of all of the evidence. The motion for dismissal shall state the specific grounds therefor. If the defendant moved for dismissal at the conclusion of the prosecution's evidence, then the motion must be renewed at the close of all of the evidence.

(c) The failure of a defendant to challenge the sufficiency of the evidence at the times and in the manner required . . . will constitute a waiver of any question pertaining to the sufficiency of the evidence to support the verdict or judgment. A motion for directed verdict or for dismissal based on insufficiency of the evidence must specify the respect in which the evidence is deficient. A motion merely stating that the evidence is insufficient does not preserve for appeal issues relating to a specific deficiency such as insufficient proof on the elements of the offense. A renewal at the close of all of the evidence of a previous motion for directed verdict or for dismissal preserves the issue of insufficient evidence for appeal.[6]

Accordingly, in order to preserve a challenge to the sufficiency of the evidence, an appellant must make a specific motion to dismiss, both at the close of the State's evidence and at the end of all the evidence, which advises the trial court of the exact element of the crime that the State has failed to prove.[7] The reason underlying our requirement that specific grounds be stated and that the absent proof be pinpointed is that it gives the trial court the option of either granting the motion, or, if justice requires, allowing the State to reopen its case and supply the missing proof.[8] We will not consider arguments that are raised for the first time on appeal, and a party is bound on appeal by the nature and scope of the objections and arguments presented at trial.[9]

■ Appellant's counsel moved to dismiss the matter before the trial court and followed that request with a litany of facts, the purpose of which appeared to be to attack the victim's credibility by insinuating that the relationship between the victim and the appellant was more than the victim admitted. She stated that the victim was "of questionable morals" and noted that there was no sign of forced entry and no DNA evidence. Following this recitation, counsel asked the court to dismiss both the residential burglary charge and the sexual assault charge. This was not sufficient to advise the court of any deficiency in the State's case. Appellant's counsel failed to assert that any specific element of either charge had not been proven.

As part of his insufficiency argument, appellant now argues that (1) the State's evidence did not prove that the victim was

5. *T.C. v. State*, 2010 Ark. 240, at 7, 364 S.W.3d 53, 59 (citing *Maxwell v. State*, 359 Ark. 335, 197 S.W.3d 442 (2004)).

6. (2013).

7. *Holt v. State*, 2011 Ark. 391, at 7, 384 S.W.3d 498, 504 (citing *Carey v. State*, 365 Ark. 379, 230 S.W.3d 553 (2006)).

8. *Id.* (citing *Pratt v. State*, 359 Ark. 16, 194 S.W.3d 183 (2004)).

9. *Reed v. State*, 2011 Ark. App. 352, at 11, 383 S.W.3d 881, 887 (citing *Whitson v. State*, 314 Ark. 458, 466, 863 S.W.2d 794, 798 (1993); and *Simmons v. State*, 90 Ark.App. 273, 278, 205 S.W.3d 194, 197 (2005)).

"physically helpless" or that the appellant committed a forcible compulsion on the victim as required for sexual assault in the second degree; and (2) the State's evidence did not prove the purpose element of residential burglary. Appellant did not make either of these arguments when making the motion to dismiss the case below; therefore, these arguments are procedurally barred.

### a. Competency of Minor

In his sufficiency argument, appellant also argues that the victim's son, a minor, was not competent to testify, or rather should have been disqualified from testifying, due to ⌊8the court's failure to require the witness to state his knowledge of the consequences of false swearing. Appellant made this argument below, however minimal the argument was; therefore, it is preserved. In *Warner v. State*, this court stated the following regarding competency:

The question of the competency of a witness is a matter lying within the sound discretion of the trial court and in the absence of clear abuse, we will not reverse on appeal. Any witness is presumed to be competent unless proven otherwise. The party alleging that a witness is incompetent has the burden of persuasion. The issue of the competency of a witness is one in which the trial judge's evaluation is particularly important due to the opportunity he is afforded to observe the witness and the testimony.

A witness's competency may be established by the following criteria: (1) the ability to understand the obligation of an oath and to comprehend the obligation

imposed by it; or (2) an understanding of the consequences of false swearing; or (3) the ability to receive accurate impressions and to retain them, to the extent that the capacity exists to transmit to the fact finder a reasonable statement of what was seen, felt, or heard. As long as the record is one upon which the trial judge could find a moral awareness of the obligation to tell the truth and an ability to observe, remember, and relate facts, we will not hold there has been a manifest error or abuse of discretion in allowing the testimony.[10]

▮ Child witnesses are treated no differently than adults in determining competency. The age of a child is not determinative of competency.[11] We apply the same presumption and standards in deciding the capacity of a child witness to testify as are applied in determining the competency of any witness.[12]

⌊9Before the trial court, the following colloquy ensued between the witness and the prosecutor:

Q: [I.B.], can you—can you answer me yes or no? Do you know that it's the right thing to do to tell the truth?

A: Yes.

Q: Okay. And it's the wrong thing to do to tell a lie? Will you get into trouble if you tell a lie?

A: Yeah.

Q: Okay. Is that wrong to tell a lie?

A: Yeah.

Q: Okay. And do you know that it's important to tell the truth today?

A: Yeah.

---

**10.** 93 Ark.App. 233, 218 S.W.3d 330 (2005) (citations omitted).

**11.** *Modlin v. State*, 353 Ark. 94, 98, 110 S.W.3d 727, 729 (2003) (citing *Hoggard v. State*, 277 Ark. 117, 640 S.W.2d 102 (1982)).

**12.** *Id.* (citing *Holloway v. State*, 312 Ark. 306, 849 S.W.2d 473 (1993)).

Q: Okay. Are you going to tell the truth here?

A: [Nodding head up and down.]

. . .

Q: What's your favorite sport?

A: Soccer.

Q: Soccer? Okay. Do you have a favorite soccer team?

A: Barcelona.

Q: Barcelona? Okay. What kind of colors does Barcelona wear on their uniforms?

A: Black and—black and purple.

Q: Black and purple? Okay.

A: And blue.

Q: Okay. Now, [LB.], if I—if I told you today that—if I said today, Isaac, I'm—I'm not standing here wearing a suit, I'm standing here wearing a uniform for the Barcelona soccer team; would that be real or not real?

A: Not real.

Q: Not real, because I'm not wearing a Barcelona uniform am I? Okay. So if I said I was wearing a Barcelona uniform today, that—would that be the truth—

A: No.

Q: —or would that be a lie?

A: A lie.

Q: It would be a lie.

. . .

Q: And [LB.], do you understand that—today that you are just like if—like I have to tell the truth about what kind of clothes I'm wearing today, okay? You have to tell the truth about what we ask you, do you understand that?

A: Yeah.

Q: Okay. And do you promise that you're going to tell the truth today when we ask you questions?

A: Yeah.

The prosecutor then began his questioning, but was interrupted by appellant's counsel who still had reservations regarding the witness's competency. The following colloquy then ensued between the court, the prosecutor, and appellant's counsel:

Ms. Ashley: I'm sorry to belay [sic] a point, but I think he needs to say what might happen if he doesn't tell the truth today. I mean, I don't know if he actually said that, as far as telling it in here, he said it with Ms. Barnes.[13] Do you feel like—

Mr. Smith: I don't think we covered that witnesses, I don't—

The Court: I don't think that's required, as long as he's making a commitment to tell the truth.

Mr. Smith: I would just put on—

The Court: And—has demonstrated an understanding of the difference between the truth and a lie, which he has.

Ms. Ashley: Okay.

Mr. Smith: And that's—I would just put that on the record that I think he had committed to that and has demonstrated an understanding of the difference between the two.

◼ Appellant argues that the court's failure to require any statement of the child's knowledge of the consequences of false swearing should have either disqualified the witness or required that he be found incompetent. However, it was not necessary for the witness to specifically state that he understood the consequences of false swearing.[14] The witness demon-

13. There is no other mention of a "Ms. Barnes" in the record.

14. *Modlin, supra,* 353 Ark. at 100, 110 S.W.3d at 731 (2003) (citing *Clem v. State,* 351 Ark. 112, 90 S.W.3d 428 (2002)).

strated a clear understanding of the difference between the truth and a lie and testified to his commitment to telling the truth.

After being accepted as competent to testify by the court, the witness testified that he remembered the night of the incident from the previous summer because he was sleeping beside his mother, the victim, when he saw the appellant touch his mom. He testified to being about to go get some water when the appellant came into the apartment, but then pretending he was asleep until the appellant left the house. He testified that his mother was asleep when she was awakened by the appellant's touching her, and then she |₁₂told the appellant to get out. Though the witness's answer changed regarding whether he had seen the appellant prior to the incident on the night of July 21, 2012, he was clear about the events of that night.

It was up to the trial court to determine whether the witness had a moral awareness of the obligation to tell the truth and an ability to observe, remember, and relate facts; therefore, we cannot find clear abuse in the court's decision permitting the witness to testify.

## II. *Wicks*

▮ In his second point on appeal, appellant argues that Officer Garcia should not have been permitted to testify regarding appellant's statement because he was not a certified court translator.[15] Because he admits that no contemporaneous objection was raised below, he seeks this court's review under Wicks v. State.[16] Wicks presents four narrow exceptions to the contemporaneous-objection rule: (1) when the trial court in a death-penalty case fails to bring to the jury's attention a matter essential to its consideration of the death penalty; (2) when defense counsel has no knowledge of the error and thus no opportunity to object; (3) when the error is so flagrant and highly prejudicial in character that the trial court should intervene on its own motion to correct the error; and (4) when |₁₃the admission or exclusion of evidence affects a defendant's substantial rights.[17] A *Wicks* exception will not apply absent a flagrant error so egregious that the circuit court should have acted on its own initiative.[18] Our case law is clear that *Wicks* presents only narrow exceptions that are to be rarely applied.[19] Appellant argues that this court should conduct plain-error review of his claims under the third and fourth exceptions to the contemporaneous-objection requirement

The third *Wicks* exception deals with a court's duty to intervene, even without an objection, to correct a serious error. In *Wicks*, our supreme court said:

A third exception is a mere possibility, for it has not yet occurred in any case. That relates to the trial court's duty to intervene, without an objection, and correct a serious error either by an admonition to the jury or by ordering a mistrial.[20]

15. Appellant also argues, again, that the victim's nine-year-old son was not competent to testify. Because we have already addressed this argument, we do not address it here.

16. 270 Ark. 781, 606 S.W.2d 366 (1980).

17. *Mahomes v. State*, 2013 Ark. App. 215, at 8–9, 427 S.W.3d 123, 129 (citing *J.S. v. State*, 2009 Ark. App. 710, 372 S.W.3d 370).

18. *Weathers v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 142, at 11, 433 S.W.3d 271, 277 (citing *Pratt v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 399, at 13, 413 S.W.3d 261, 263).

19. *Lard v. State*, 2014 Ark. 1, at 27, 431 S.W.3d at 268 (citing *Chunestudy v. State*, 2012 Ark. 222, 408 S.W.3d 55).

20. *Id.*, 2014 Ark. at 26–27, 431 S.W.3d at 268 (citing *Wicks*, 270 Ark. at 786, 606 S.W.2d at 369–70) (citations omitted).

The supreme court has held that the third exception is limited to only those errors affecting the very structure of the criminal trial, such as the fundamental right to a trial by jury, the presumption of innocence, and the State's burden of proof.[21]

The offending action was Officer Garcia's testimony to statements made to him by the appellant, in spite of the appellant's decision not to testify pursuant to his constitutional right to remain silent. This action is similar to that taken in *Chunestudy v. State*, where the officer who took Chunestudy's statement after Mirandizing him was allowed to testify regarding Chunestudy's statement, in spite of Chunestudy's decision to exercise his right to remain silent.[22] In that case, the supreme court held that the officer's testimony did not fall within the purview of the third *Wicks* exception, and so, we hold the same here.

The fourth *Wicks* exception deals with the admission or exclusion of evidence that affected the defendant's substantial rights. The fourth *Wicks* exception has its roots in Arkansas Rule of Evidence 103(d), which provides that "[n]othing in this rule precludes taking notice of errors affecting substantial rights, although they were not brought to the attention of the court."[23] Our supreme court has warned against relying on this exception, stating that it "is negative, not imposing an affirmative duty, and at most applies only to a ruling which admits or excludes evidence."[24] Because this issue deals with evidentiary rulings by the trial court, which are subject to an abuse-of-discretion standard, such rulings "simply must be raised below before this court will consider them on appeal."[25] In *Mathis*, the offending action was testimony from the Lonoke County Dispatcher to statements the victim made to her during a 911 call that contradicted to the victim's testimony on the stand at trial. This is similar to our case where a statement made out of court was testified to in court by someone other than the speaker. In *Mathis*, this court declined to apply the fourth *Wicks* exception, and we decline to apply it now. Therefore, because neither the third nor the fourth *Wicks* exceptions apply, and the argument was not raised below, it is not preserved.[26]

Even if it is assumed that the fourth *Wicks* exception applies in the present case and that the issue of whether Officer Garcia's testimony can be considered on appeal despite appellant's failure to contemporaneously object, any conclusion that appellant's Fifth Amendment rights were violated is subject to a harmless-error analysis.[27] In *Vankirk v. State*, our supreme court explained that:

Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness'[s] testimony

21. *Id.*, 2014 Ark. at 27, 431 S.W.3d at 268 (citing *White v. State*, 2012 Ark. 221, 408 S.W.3d 720).

22. 2012 Ark. 222, 408 S.W.3d 55.

23. *Halliday v. State*, 2011 Ark. App. 544, at 10, 386 S.W.3d 51, 57 (citing Ark. R. Evid. 103(d) (2010)).

24. *Id.* (citing *Buckley v. State*, 349 Ark. 53, 65–67, 76 S.W.3d 825, 833 (2002) (quoting *Wicks*, 270 Ark. at 786, 606 S.W.2d at 370)).

25. *Mathis v. State*, 2012 Ark. App. 285, at 8, 423 S.W.3d 91, 96 (citing *Crawford v. State*, 362 Ark. 301, 208 S.W.3d 146 (2005) (quoting *Buckley v. State*, 349 Ark. 53, 66, 76 S.W.3d 825, 833 (2002))).

26. *Lucas v. Wilson*, 2011 Ark. App. 584, 385 S.W.3d 891.

27. *Mahomes v. State*, 2013 Ark. App. at 9, 427 S.W.3d at 129.

in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.[28]

In light of the victim's testimony that the appellant touched her breasts on top of her shirt and touched her vagina under both her pants and underwear, which is sufficient to support conviction, the testimony of Officer Garcia would constitute harmless error.[29]

Affirmed.

WALMSLEY and WOOD, JJ., agree.

---

**28.** *White v. State*, 2012 Ark. 221, at 6, 408 S.W.3d 720, 724 (citing *Vankirk*, 2011 Ark. 428, at 11, 385 S.W.3d at 151 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986))).

**29.** *Castrellon v. State*, 2013 Ark. App. 408, at 4–5, 428 S.W.3d 607, 611 (citing *Colburn v. State*, 2010 Ark. App. 587, 2010 WL 3582441) (the victim's testimony need not be corroborated for the victim's testimony alone is enough for a conviction.)