

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CR-15-294

| | |
|---|---|
| LASABA MICHAEL HILL<br>APPELLANT | **Opinion Delivered** December 9, 2015 |
| V. | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT<br>[NOS. CR2014-383-6; CR2014-1576-6] |
| STATE OF ARKANSAS<br>APPELLEE | HONORABLE WILLIAM A. STOREY, JUDGE |
| | AFFIRMED |

## RITA W. GRUBER, Judge

Lasaba Michael Hill was charged in February 2014 with delivery of two grams or less of methamphetamine or cocaine. The charge stemmed from an October 2013 controlled buy in which confidential informant Christopher Johnson purchased drugs from Hill at a Fayetteville apartment complex where they both had lived. In August 2014 Hill was charged with possession of firearms by certain persons, stalking in the first degree, intimidating an informant, aggravated assault, terroristic threatening, battery in the second degree, and habitual offender. A December 10, 2014 amended information removed the assault and terroristic-threatening charges but added a charge of attempted capital murder, supported by an allegation that on July 28, 2014, with the premeditated and deliberate purpose to cause Johnson's death, Hill went to Johnson's residence armed with a pistol.

The cases were combined for a three-day jury trial that began on December 15, 2014. The jury found Hill guilty of attempted capital murder, delivery of methamphetamine,

stalking, and intimidating an informant. He was sentenced as a habitual offender to enhanced prison terms of 360 months for the attempted murder, 120 months for delivery of methamphetamine, 180 months for first-degree stalking, and 120 months for intimidating an informant—the second sentence to be served consecutively to the first, and the others to be served concurrently. He now appeals, contending that the trial court (1) erred in denying his motion for a directed verdict on attempted capital murder and (2) abused its discretion in denying his motion for a continuance. We disagree and affirm.

## I. *Motion for a Directed Verdict on Attempted Capital Murder*

In his first point on appeal, Hill contends that there was insufficient evidence that he took a substantial step with premeditation to kill Christopher Johnson. Hill argues that there was no proof that he actually tried to shoot the victim, leaving the jury to rely on conjecture. He acknowledges evidence showing that he was present with a firearm and had previously made threats about wanting to kill Johnson. He also acknowledges Johnson's testimony that Hill hit him with a gun, pointed it at him, and pushed him from a balcony approximately eight feet from the ground. He asserts that this evidence is inconsistent with an intent to kill Johnson and is consistent with other reasonable inferences, such as intent to intimidate and threaten Johnson to prevent him from testifying.

A person commits capital murder if "[w]ith the premeditated and deliberated purpose of causing the death of another person, the person causes the death of any person." Ark. Code Ann. § 5-10-101(a)(4) (Repl. 2013). A person commits attempted capital murder if without causing the death of any person, he engages in conduct that "[c]onstitutes a

substantial step in a course of conduct intended to cause the death of another person." Ark. Code Ann. § 5-3-201(a)(2) (Repl. 2013). Conduct constitutes a substantial step if it is strongly corroborative of the person's criminal purpose. Ark. Code Ann. § 5-3-201(c).

A motion for a directed verdict is treated on review as a challenge to the sufficiency of the evidence. *Cobb v. State*, 340 Ark. 240, 243, 12 S.W.3d 195, 197 (2000). The appellate court will consider only the evidence supporting the verdict and will view the evidence in the light most favorable to the State. *Id.* The conviction will be affirmed if substantial evidence supports it. Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without mere speculation or conjecture. *Id.* Circumstantial evidence can provide the basis to support a conviction, but it must be consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *Id.* Whether the evidence excludes every hypothesis is left to the jury to decide. *Id.* The jury is free to believe all or part of any witness's testimony and to resolve questions of conflicting testimony and inconsistent evidence; the credibility of witnesses is an issue for the jury rather than for the appellate court. *Id.*

The premeditation necessary for a conviction of capital murder need not exist for a particular length of time. *Ali v. State*, 2011 Ark. App. 758, at 5. Indeed, premeditation may be formed in an instant and is rarely capable of proof by direct evidence, but must usually be inferred from the circumstances of the crime. *Id.* Premeditation and deliberation may be inferred from such factors as the conduct of the accused, the type and character of a weapon, the manner in which the weapon was used, and the nature, extent, and location of any

wounds. *Id.* We have defined deliberation as the weighing in one's mind of the consequences resulting from a course of conduct, as distinguished from acting upon a sudden impulse without the exercise of reasoning powers. *Id.*

The State's evidence in the present case included a recording of a 911 call and the testimony by Melinda Ringgold, who made the call on July 28, 2014, to report an incident at the apartment complex where she lived. In the 911 call, Ringgold said that Hill was the aggressor, that he was holding Johnson down and telling him, "I'm gonna kill you," and that Hill "was running after him telling him he was gonna kill him" once Johnson got away and ran. Jacobey Cooley testified that he and Hill became cellmates in the Washington County jail after Hill's July 28 arrest and that Hill talked about the case, saying that he was trying to take Johnson's life and shot at him when he "took off running." The State also presented testimony of the officers who investigated the 2013 controlled buy and the 2014 incident, as well as of Officer Tom Mulvaney, who tracked phone calls at the jail and reviewed transcriptions of those made by Hill. Viewed in the light most favorable to the verdict, the evidence reveals the following.

Johnson's name was released to Hill's counsel in mid-June 2014 as the confidential informant in the undercover buy. Hill afterward began threatening Johnson, saying such things as "I'm gonna kill you for snitching, for setting me up." Johnson became frightened and told police of the threats. On July 28, 2014, he was sitting in a stairwell in the middle of the apartment complex when he looked up to see Hill in front of him. Johnson testified as follows:

He kept on cussing me and telling me all, "You got me, you set me up, I'm fit'n to kill you right now." That's when he came up the stairs halfway and grabbed me and I was trying to get away from him. He kept on calling his wife, Sandra, "Bring me the gun, bring me the gun." When he grabbed me, he hit me then with his fist. When he came up, that's when he grabbed me by my shirt. And like I said, I was trying to get away. He kept on calling his wife Sandra telling her to bring the gun, bring the gun and then she brought him that bag. She had a backpack. She gave it to [him]. The gun came from the backpack.

. . . .

It was a semi-automatic, not a revolver. After she gave him the bag he told them to get out of the way, get by the road. He said he wanted them out of the way because I'm fit'n to kill this mother . . . . Sandra's daughter was with her. . . . Once [he] had the gun he hit me on the side of the head with it, right here. He let go, that's when I broke loose and being like this on the other side, I went over [the stair rail] and by the time I touched the ground that's when he was charging towards me. I dropped my wallet, keys, and phone, and by the time I grabbed my keys and wallet, it was too late to grab the rest of it 'cause he was right there on me. . . . [W]here I landed, I just bent down and grabbed my keys and my phone. I left my wallet behind. The gun was pointed towards me. I guess the bullets jammed in the chamber and he was like trying to cock it back.

I ran, . . . yeah, I ran. There's a fence right there at the corner of the apartments. There's an open gap right there. I ran right through it behind the Dollar General and Buddy's Furniture Store. He chased me all the way to the fence. As I looked back that's when I saw his wife picking up the wallet. I just kept on running. . . . I called the police.

Corporal David Williams located Hill shortly afterward at a nearby business. Hill, who did not have a gun at the time, admitted being angry with Johnson for wearing a wire during the drug buy. Hill said that he "wanted to tag that booty"; he admitted confronting Johnson about the wire and chasing him; but he denied having a physical confrontation. Police conducted an extensive search around the apartment complex but could not find a gun. However, Corporal James Jennings discovered a bullet with its shell casing intact on the ground where Johnson had landed in his fall over the stair railing. Jennings testified:

[Johnson] told Officer Slape that [Hill] had been racking the slide. Finding the bullet was consistent with having racked the slide; if you rack the slide and the gun is loaded you will dispel an unfired bullet. . . . I'm trained that if I have a malfunction to rack the slide to get the gun back in operation, get everything lined back up, getting the bullet lined back into the firing chamber properly so it would fire properly. So just because you have one malfunction doesn't mean the second one will malfunction. Striking someone with a weapon could cause it to malfunction.

In summary, there was testimony before the jury that prior to the altercation, Hill expressed his intent to kill Johnson; that before and during the attack, Hill said he intended to kill Johnson for snitching; and that Hill admitted he wanted "to tag that booty." Melinda Ringgold saw Hill attack Johnson, and she heard Hill tell Johnson that he (Hill) was going to kill Johnson. Afterward, Hill told his cellmate that he wanted Johnson dead and had fired a shot at him. Viewed in the light most favorable to the State, this evidence shows that Hill possessed the required mental state to commit capital murder and that he took a substantial step to complete the offense. Hill threatened to kill Johnson and made the conscious decision to attack him with a semiautomatic gun, which Hill had his wife bring him during the altercation. The gun jammed when Hill pointed it at Johnson in order to shoot and kill him, but he escaped before Hill could attempt to fire again. We hold that there was sufficient evidence to convict Hill of attempted capital murder.

## II. *The Motion for a Continuance*

A lower court's grant or denial of a motion for continuance is reviewed under an abuse-of-discretion standard. *Creed v. State*, 372 Ark. 221, 223, 273 S.W.3d 494, 496 (2008). The denial of a motion for continuance will not be overturned unless the appellant demonstrates that the trial court abused its discretion and proves prejudice that amounts to

2015 Ark. App. 700

a denial of justice. *Id.* When a motion for continuance is based on a lack of time to prepare, the appellate court considers the totality of the circumstances. *Mahomes v. State*, 2013 Ark. App. 215, at 7, 427 S.W.3d 123, 127.

On December 11, 2014, Hill asked for a continuance for the following reasons: the amended information gravely changed the nature of the offenses and the exposure he would be facing; it was recently discovered that the confidential informant had been working off a drug charge rather than working as a paid informant, as the State and Hill had originally thought; and Hill's wife was attempting to retain private counsel for him. Hill's counsel stated to the court that on December 8, the prosecutor—upon receiving information during trial preparations that could provide evidence of premeditated and deliberated purpose to cause death—had promptly informed Hill that an amended charge of attempted capital murder was being considered. Counsel also told the court that the State had attempted to negotiate a plea with Hill under the original information and had delayed amending the information until December 10, after negotiations had failed.

In his request for a continuance, counsel asserted that he had a lot of work to do on trying to craft a defense to the mental state of premeditated and deliberated purpose. He asked for time to consult a firearms expert in order to counter the State's anticipated testimony that racking the slide was an attempt to clear a round and fire again.

The trial court denied Hill's request for a continuance, ruling as follows:

[C]learly, and I appreciate the candor of [counsel], the amended complaint comes as no surprise to the defendant. [Counsel was] put on notice that the State intended to do that well in advance of the amended complaint being filed. Secondly, as argued by the State, the facts in this case have not changed. The charge, obviously, has changed

7

and risen to the level of a Y felony, but clearly, the charge has not changed. We're set for trial now Monday the 15th. I'm confident that counsel has more than adequate time to prepare whatever additional preparation may be possibly necessary, although counsel indicates he needs to consult with a firearms expert. I'm confident that counsel will be able to do that within the next four days prior to the trial. So I'll deny the motion for a continuance. This matter has been, in my judgment, here too long. It needs to be resolved and I think its in everybody's best interest, Mr. Hill's best interest, as well as the State's best interest, to resolve this case with a trial beginning Monday the 15th.

The court noted that, although relatives were trying to hire new counsel, there was "absolutely nothing before the court or in the record that anybody has been hired" and that Hill fortunately was represented by "very competent counsel." The court ordered that the case would proceed to trial as scheduled on Monday, December 15.

Hill argues on appeal that the denial of his motion for a continuance amounted to a denial of justice because, just days before trial, the amended information charging him with attempted capital murder changed the nature of the defense and that he was not afforded the time or opportunity to make preparations necessary for a defense against the charge. We review the denial of the motion under a totality of the circumstances. *See Mahomes*, 2013 Ark. App. 215, at 7, 427 S.W.3d at 127.

The original felony information contained seven counts, including aggravated assault, a Class D felony, and terroristic threatening, a Class D felony. During trial preparation, the prosecutor realized he would be able to prove that Hill deliberately went to the apartment complex to kill the confidential informant. The prosecuting attorney immediately informed Hill's attorney that he intended to amend the information to include charges of attempted capital murder, a Class Y felony, but he delayed amending the information in an attempt to

8

negotiate a plea with Hill under the original information. On December 10, 2014, once negotiations failed, the State timely amended the information charging Hill with attempted capital murder instead of aggravated assault and terroristic threatening. The facts, witnesses, and evidence for the new charge of attempted capital murder were identical to those for the previous charges. *See Dodge v. State*, 2014 Ark. 116, at 6 (observing that the State is entitled to amend an information at any time prior to the case being submitted to the jury as long as the amendment does not change the nature or the degree of the offense charged or create an unfair surprise).

Regarding Hill's alternate bases for a continuance, whether the confidential informant was a paid informant or was working off charges is immaterial. In addition, at the time of Hill's motion for continuance, a private attorney had not actually been hired, and the court considered his current counsel to be competent to represent him. *See Thomas v. State*, 2014 Ark. App. 492, at 10, 441 S. W.3d 918, 925 (stating this court may consider the reasons for the change, whether counsel has been identified, whether the defendant has been diligent in seeking the change, and whether any prejudice is likely to result when ruling on a motion for continuance). Even if Hill demonstrated that the circuit court abused its discretion in denying his request for a continuance, he failed to allege particular facts showing prejudice that resulted in a denial of justice. *See Green v. State*, 2012 Ark. 19, at 3, 386 S. W.3d 413, 415 (concluding that the denial of a motion for continuance will not be overturned absent a showing of prejudice by the defendant). The trial court ruled that it was in the best interest of both Hill and the State that the case proceed to trial as scheduled. We find no abuse of

9



discretion in the denial of the motion for a continuance.

Affirmed.

VAUGHT and BROWN, JJ., agree.

*Laura Avery*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Brooke Jackson*, Ass't Att'y Gen., for appellee.