Cite as 2021 Ark. App. 325

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CR-20-576

| | | |
|---|---|---|
| | | **Opinion Delivered** September 8, 2021 |
| TRISTAN TIARKS | | |
| | APPELLANT | APPEAL FROM THE BENTON COUNTY CIRCUIT COURT [NO. 04CR-19-75] |
| V. | | |
| | | HONORABLE ROBIN F. GREEN, JUDGE |
| STATE OF ARKANSAS | | |
| | APPELLEE | AFFIRMED |

## LARRY D. VAUGHT, Judge

Tristan Tiarks appeals the sentencing order entered by the Benton County Circuit Court convicting him of the rape, aggravated assault, and second-degree domestic battery of three-year-old SW, the daughter of his girlfriend, Leah Brasuell, and sentencing him to thirty years' imprisonment. On appeal, he argues that the circuit court abused its discretion by (1) allowing the testimony of expert witness Dr. Karen Farst to bolster the expert-witness testimony of nurse practitioner Heather Dawn Hannah; (2) allowing the State to cross-examine Tiarks's mother (Gail Harris) about two prior allegations of misconduct; (3) failing to order a mistrial after evidence was introduced that Tiarks "matched the profile of a sex offender"; (4) allowing the State to make two improper arguments in closing argument; and (5) failing to grant Tiarks a new trial as a result of the cumulative errors made by the circuit court. We affirm.

Tiarks does not challenge the sufficiency of the evidence supporting his convictions; therefore, only a brief summary of the trial testimony is provided here. Leah Brasuell, who has three daughters (AW, MW, and SW), testified that she was engaged to Tiarks, who has three children of his own (MT, KT, and AT). On January 10, 2019, Brasuell and Tiarks were planning a birthday party for KT. Brasuell said that around 6:00 p.m., she and MW went to Walmart to pick up supplies for the party and that she left SW with Tiarks at his home. When Brasuell returned around 7:15 p.m., Tiarks told her that SW had fallen asleep while she was playing, so he put her to bed. Brasuell did not check on SW.

The next morning, Brasuell went to the bathroom and saw Tiarks wiping SW's bottom. He told Brasuell that there was blood on SW's bottom. Brasuell stated that she picked up SW, put her on a bed, spread her legs, and saw bright red blood coming from her vagina. Later that morning, Brasuell asked SW what happened the night before, and SW said that Tiarks put a towel around her neck. SW denied that Tiarks put something in her bottom. Brasuell sought medical treatment for SW at the emergency room in Bella Vista, Arkansas.

Emergency-room nurse Sarah Hansen testified that she performed the initial examination of SW on January 11. Hansen said that SW had petechiae—small red spots from burst blood vessels that are caused by bearing down, squeezing, or cutting off airways for a prolonged period of time—around her eyes and face and red ligature marks on her neck, all of which were medically consistent with her report that a towel had been wrapped around her neck. Hansen said the police were notified, and SW was referred to the Children's Advocacy Center (CAC) in Rogers, Arkansas, for a sexual-assault examination.

Heather Dawn Hannah, a nurse practitioner at the CAC, testified that she performed a videotaped forensic examination of SW on January 11. Hannah testified that she observed redness and petechiae on SW's face and neck, bright red blood in SW's underwear, dried blood on the genital area, and a fresh tear that was still bleeding that extended past the external genital organ into the vagina. Hannah stated that the vaginal injury had occurred within the past twenty-four to thirty-six hours. When Hannah touched SW's genitals to determine the severity of the injuries, SW became upset, and Hannah stopped the exam. Hannah then consulted with Dr. Karen Farst, a child-abuse pediatrician at Arkansas Children's Hospital in Little Rock. After the consultation, Hannah recommended SW undergo a sedated examination at Arkansas Children's Hospital–Northwest (ACHNW), a CT scan to check for brain damage, and a full-body skeletal survey to check for broken bones. At ACHNW, Hannah performed a second genital examination of SW while she was under sedation. Hannah discovered that SW's genital tear extended past the posterior fourchette, through the vestibule, fossa, hymen, and into the vaginal floor. Hannah compared the injury to a first-degree tear from childbirth.

Dr. Farst testified that she was contacted by Hannah on January 11 for a consultation on SW's treatment. Dr. Farst, who watched the video of Hannah's examination of SW, stated that she observed active bleeding in SW's vagina but could not determine the depth or source of the injury. Dr. Farst said that she recommended that further examination under sedation be conducted at ACHNW along with the skeletal survey and CT scan. From her review of the video, Dr. Farst believed that the vaginal injury had occurred within twenty-four to thirty-six hours of the examination.

Tiarks testified that on the night of January 10, he watched SW while Brasuell and MW went to Walmart. Tiarks said while they were gone, SW fell asleep, and he put her to bed. The next morning, he woke SW up and took her to the bathroom and saw blood on her bottom. Tiarks agreed that SW had been raped, that it occurred within twenty-four to thirty-six hours of her medical examinations, and that she had no neck or vaginal injuries when he put her to bed on January 10. However, he denied having harmed her. He also denied that he was the only person with SW during the time period in question.

The jury found Tiarks guilty of rape, aggravated assault, and second-degree domestic battery. This appeal followed.

Tiarks's first argument on appeal is that the circuit court abused its discretion by allowing the testimony of expert witness Dr. Farst to bolster the expert-witness testimony of nurse practitioner Hannah. He contends that Dr. Farst did not examine SW herself but merely watched the video of Hannah's examination of SW, then Dr. Farst testified about what Hannah saw. Tiarks argues that Dr. Farst did not offer any facts, data, or conclusions of her own. Tiarks further asserts that he suffered prejudice by the admission of Dr. Farst's testimony because it bolstered Hannah's testimony that established the timing of SW's injuries, which was when she was alone with Tiarks.

We review the admission of expert testimony under an abuse-of-discretion standard. *Pafford v. State*, 2017 Ark. App. 700, at 10, 537 S.W.3d 302, 309. The Arkansas Supreme Court has said that circuit courts have broad discretion and that a circuit court's ruling on the admissibility of evidence will not be reversed absent an abuse of that discretion. *Id.*, 537 S.W.3d

4

at 309. To qualify as an abuse of discretion, the circuit court must have acted improvidently, thoughtlessly, or without due consideration. *Id.*, 537 S.W.3d at 309.

The test for admissibility of expert testimony is whether it will aid the trier of fact in understanding the evidence or in determining a fact in issue. Ark. R. Evid. 702 (2021). However, one of the functions of the jury is to determine the credibility of witnesses, and expert testimony on the credibility of witnesses is an invasion of the jury's province. *Hinkston v. State*, 340 Ark. 530, 536, 10 S.W.3d 906, 910 (2000). In *Hinkston*, our supreme court affirmed the circuit court's exclusion of expert-witness testimony that commented on the credibility of the appellant. *Id.*, 10 S.W.3d at 910. Likewise, an expert's or a witness's testimony opining or directly commenting on the truthfulness of a victim's statement or testimony is generally inadmissible. *Beard v. State*, 2020 Ark. 62, at 7, 594 S.W.3d 29, 32.

In support of his argument, Tiarks relies on *Huawei Techs. Co. v. Samsung Elecs. Co.*, 340 F. Supp. 3d 934 (N.D. Cal. 2018). In *Huawei*, the district court excluded the expert testimony of an economist that was offered to "vouch" for or support the methodology used by the same parties' expert accountant. *Id.* at 994. While *Huawei* stands for the proposition that an expert witness's testimony that comments on or bolsters the methodology used by another expert witness is inadmissible, Tiarks's reliance on this case is misplaced because Dr. Farst's testimony was not offered to bolster Hannah's testimony or comment on her truthfulness or credibility.

Dr. Farst observed SW's injuries via the videotape of her examination. Dr. Farst explained that SW suffered a vaginal-penetration injury that was still bleeding and that the bleeding obscured her view and prevented her from determining the depth and severity of the

injury. Dr. Farst stated it was necessary to determine the depth and severity of the injury in case SW required abdominal or rectal surgery. On the basis of her findings, Dr. Farst recommended to Hannah that SW be transferred to another facility for a sedated vaginal examination, a CT scan, and a full-body skeletal survey. Therefore, Dr. Farst's testimony was offered to explain SW's course of treatment. While Dr. Farst also testified about the cause and timing of SW's injuries, she did not "parrot" Hannah's conclusions. Dr. Farst's causation and timing opinions were her own and were required in order for her to formulate a treatment plan for SW.

Because Dr. Farst's testimony was clinical in nature, was based on her own observations, and did not comment on Hannah's findings or her credibility, it is permissible. *Barnum v. State*, 2020 Ark. App. 523, at 28, 614 S.W.3d 453, 469 (affirming admission of expert testimony of doctor that rendered a medical explanation based on the findings of the physical examination she performed on the victim rather than opining on the victim's truthfulness). On these facts, we cannot say the circuit court acted thoughtlessly and abused its discretion in permitting Dr. Farst's testimony.

Tiarks's second argument on appeal involves the testimony of his mother, Gail Harris, who was a defense witness. On direct examination, Harris was asked about Tiarks's reputation for peacefulness in the community, and Harris testified, "There's never been a problem out of him ever. He's a mentor and a healer of people and that's what he loves."

The State argued that Harris's testimony opened the door to his being asked about a 2012 allegation of misconduct made by one of Tiarks's physical-therapy patients and about

allegations in 2018 of sexual misconduct against his children made by his ex-wife, Jakesa. The circuit court agreed and allowed the State to question Harris about these prior allegations.

The State then asked Harris if she was aware that in 2018, KT had said that Tiarks touched her vagina in the morning sometimes and that AT, who was two years old at the time, came home from Tiarks's house bleeding from his anus. Harris said no. The State also asked Harris if she was aware that in 2012, Tiarks had his physical-therapy license suspended after a nineteen-year-old patient complained that he improperly placed tape near her vagina. Harris answered that she was aware of it and that Tiarks's license was not suspended. She further stated that the 2012 incident did not change her opinion of her son: "[H]e's a mentor and a healer. I don't take that back." On redirect, Harris clarified that Tiarks was placed on probation following the 2012 incident.

Tiarks argues on appeal that the circuit court abused its discretion when it allowed the State to cross-examine Harris about the 2012 and 2018 allegations. He claims that the admission of this evidence was prejudicial because it served to portray him as a "person with a background of perverse sexual activity who had been accused of improper conduct and at least once punished for it."

Our supreme court has recognized that by producing a character witness, the defendant opens the door to evidence that might otherwise have been inadmissible. *Smith v. State*, 316 Ark. 407, 411, 872 S.W.2d 843, 845 (1994). Arkansas Rule of Evidence 405 clearly provides that in cross-examining a defendant's character witness, it is permissible to inquire into the witness's knowledge of specific instances of conduct. *Id.*, 872 S.W.2d at 845. Such cross-examination tests the witness's knowledge of the defendant's reputation and that, in turn, may

go to the weight to be given his opinion. *Id.*, 872 S.W.2d at 845. Further, Rule 405 places no limit, other than relevancy, on the kinds of instances of misconduct with respect to which cross-examination may occur. *Id.*, 872 S.W.2d at 845.

In *Smallwood v. State*, 326 Ark. 813, 819, 935 S.W.2d 530, 533 (1996), the circuit court found that the appellant, who had been convicted of rape and burglary, opened the door to otherwise inadmissible evidence of other prior violent acts or threats after he testified that he did not threaten the victim with a knife because he was "not that type of person." On appeal, the supreme court affirmed, holding that by claiming that he was not the "type of person" to threaten someone with a knife, the appellant placed his propensity toward violence in issue. *Id.*, 935 S.W.2d at 533.

In the case at bar, we hold that the circuit court did not abuse its discretion in ruling that Tiarks opened the door to the questioning about the prior allegations of misconduct after Harris testified that there had "never been a problem out of [Tiarks] ever" and that he is "a mentor and a healer of people." This evidence tested Harris's knowledge of her son's character and goes to the weight to be given to her opinion. Accordingly, we affirm on this point.

For his third argument on appeal, Tiarks contends that the circuit court abused its discretion when it failed to order, sua sponte, a mistrial during the testimony of Tim Brasuell, Leah's brother. Tim was called as a witness for the defense, and during his direct testimony, he stated that he had a "very odd feeling about [Tiarks] pretty early on." Tim said that Tiarks tried "way too hard to be Mr. Perfect." On cross-examination by the State, Tim testified that he had previously been a police officer and that part of his job was to monitor sex offenders. Tim attributed the "odd feeling" he had about Tiarks to being around a lot of sex offenders.

8

On redirect, the defense pressed Tim on this issue, and Tim stated that he did not know that Tiarks was a sex offender, but "I knew there was something wrong. I knew there was something odd about him that just wasn't right."

Tiarks contends that Tim's sex-offender "profile testimony" was improper because it invaded the province of the jury by mandating a legal conclusion and because it was unduly prejudicial. In making this argument, Tiarks admits that his trial counsel failed to make a contemporaneous objection to the "profile evidence," yet Tiarks contends that the testimony was so flagrant and so highly prejudicial that the court had the duty on its own motion to order a mistrial under the third *Wicks* exception.

The law is well settled that to preserve an issue for appeal, a defendant must object at the first opportunity. *Chunestudy v. State*, 2012 Ark. 222, at 9, 408 S.W.3d 55, 61. A party who does not object to the introduction of evidence at the first opportunity waives such argument on appeal. *Id.*, 408 S.W.3d at 61–62. However, in *Wicks v. State*, the supreme court approved four limited exceptions to the contemporaneous-objection rule to preserve an issue for review: (1) a circuit court's failure to bring a matter essential to consideration of the death penalty to the jury's attention; (2) when error is made by the circuit court when counsel has no knowledge of the error; (3) when the circuit court has a duty to intervene and correct flagrant and highly prejudicial errors; and (4) under Ark. R. Evid. 103(d) providing that appellate courts are not denied review of errors affecting substantial rights even if not brought to the attention of the circuit court. 270 Ark. 781, 785–87, 606 S.W.2d 366, 369–70 (1980).

In *Baumann v. State*, this court stated that the third *Wicks* exception is a narrow one that has thus far been applied only in cases where the fundamental right to a jury trial is at issue.

2018 Ark. App. 564, at 17, 566 S.W.3d 494, 505. The third *Wicks* exception has been applied very rarely to matters such as (1) the right to a twelve-person jury, *Grinning v. City of Pine Bluff*, 322 Ark. 45, 50, 907 S.W.2d 690, 692 (1995); (2) the right to a trial by jury, *Calnan v. State*, 310 Ark. 744, 749, 841 S.W.2d 593, 596 (1992), and *Winkle v. State*, 310 Ark. 713, 717–18, 841 S.W.2d 589, 591 (1992); (3) violation of Arkansas Code Annotated section 16-89-125(e), *Goff v. State*, 329 Ark. 513, 525, 953 S.W.2d 38, 45–46 (1997); and (4) statements by a prosecutor in voir dire that have the effect of shifting the burden of proof, *Anderson v. State*, 353 Ark. 384, 401, 108 S.W.3d 592, 603 (2003).

In contrast, the third *Wicks* exception was not applied (1) to consider possible prosecutorial errors in relation to cross-examination, *Vaugh v. State*, 338 Ark. 220, 227, 992 S.W.2d 785, 789 (1999); (2) to privileged testimony, *Hale v. State*, 343 Ark. 62, 82, 31 S.W.3d 850, 862 (2000); or (3) in closing arguments, *Chunestudy*, 2012 Ark. 222, at 10, 408 S.W.3d at 62.

We decline to apply the very narrow third *Wicks* exception in this case. Tim's testimony did not infringe on Tiarks's fundamental right to a jury trial. Rather, the challenge to Tim's testimony involves a determination of whether it was probative or unduly prejudicial—evidentiary matters for which contemporaneous objections are required.

Tiarks's reliance on *Brunson v. State*, 349 Ark. 300, 79 S.W.3d 304 (2002), is misplaced. In *Brunson*, our supreme court reversed and remanded the appellant's convictions because the circuit court allowed an expert witness to present profile testimony—factors that determine when a batterer will escalate into a murderer—that mandated a conclusion and was unduly prejudicial. However, in that case, contemporaneous objections to the profile evidence were

made: defense counsel objected to the qualification of the witness as an expert, objected to her testimony on grounds of surprise and a discovery violation, and moved for a mistrial two times. *Id.* at 307, 79 S.W.3d at 308. Assuming arguendo that Tim's testimony could be considered "profile evidence," no contemporaneous objections to that evidence were made. Accordingly, we hold that the third *Wicks* exception does not apply to Tim's testimony. Without a contemporaneous objection to his testimony, Tiarks's third point on appeal challenging that evidence is not preserved.

For his fourth point on appeal, Tiarks argues that the circuit court abused its discretion when it allowed the State to make two improper arguments during closing argument: Tiarks must have been guilty of raping SW because allegations of sexual abuse had been made against him in 2018, and Tiarks should have called his son MT to testify to establish Tiarks's innocence.[1] However, Tiarks concedes that no contemporaneous objections were made during the State's closing argument. He again contends that the third *Wicks* exception applies and that no contemporaneous objection was required.

Absent a contemporaneous objection at trial, we will not review alleged errors in the State's closing argument. *Lard v. State*, 2014 Ark. 1, at 26, 431 S.W.3d 249, 268. As set forth above, the third *Wicks* exception is limited to only those errors affecting the very structure of the criminal trial, such as the fundamental right to a trial by jury, the presumption of innocence, and the State's burden of proof. *Id.* at 27, 431 S.W.3d at 268. The remarks Tiarks complains of here do not rise to this level; therefore, the *Wicks* exception does not apply.

---

[1]When police searched Tiarks's home, they found bedding in the washing machine. The defense argued at trial that the bedding was not the bedding SW had slept on the night before; rather, it was the bedding of Tiarks's son MT, who had wet the bed the night before.

Moreover, the cases on which Tiarks relies—*Ayala v. State*, 365 Ark. 192, 226 S.W.3d 766 (2006); *Anderson, supra*; *Goff, supra*; and *Grinning, supra*—do not support his contention. None of these cases applied the third *Wicks* exception to a prosecutor's closing argument. Rather, our supreme court has consistently refused to apply the third *Wicks* exception to a prosecutor's allegedly improper closing argument absent a contemporaneous objection. *Lard*, 2014 Ark. 1, at 27, 431 S.W.3d at 268; *Buckley v. State*, 349 Ark. 53, 68, 76 S.W.3d 825, 834 (2002). Because there were no contemporaneous objections to the State's closing arguments, Tiarks's challenge to those arguments on appeal are not preserved for our review.

Tiarks's final point on appeal is that he is entitled to a new trial as a result of the cumulative errors made by the circuit court. For support, he relies on *Dillon v. State*, 311 Ark. 529, 844 S.W.2d 944 (1993) (*Dillon I*), wherein our supreme court reversed and remanded the appellant's rape conviction on the basis of the prosecutor's cumulative errors that crafted a "mosaic" of the appellant as one who forced sex on women and that denied the appellant a fair trial. Tiarks contends that the circuit court—by admitting improper evidence during the testimony of Tim Brasuell and Gail Harris and by allowing the State to make improper arguments during closing argument—allowed the State to create a "mosaic" of Tiarks as a pedophile and sexual deviant. We reject this argument.

First, an appellant asserting a cumulative-error argument must show that there were objections to the alleged errors individually and that a cumulative-error objection was made to the circuit court and a ruling obtained. *Munson v. State*, 331 Ark. 41, 45, 959 S.W.2d 391, 392 (1998). In this case, Tiarks not only failed to raise objections to two of his points on appeal

but also further failed to make a cumulative-error argument below. Therefore, this argument is not preserved for appeal.

Citing the dissent in *Dillon I*, Tiarks contends that a cumulative-error objection is not required at trial. The majority opinion in *Dillon I* is clear that defense counsel objected at every instance of alleged prosecutorial misconduct and moved for a mistrial on multiple occasions. However, the majority opinion is not clear whether the appellant made a cumulative-error argument on appeal.[2] However, the confusion in *Dillon I* was cleared up in *Dillon v. State*, 317 Ark. 384, 394, 877 S.W.2d 915, 920 (1994) (*Dillon II*). On remand, the appellant was again convicted of rape, and he raised six issues on appeal—one of which was the cumulative-error argument. The supreme court rejected the argument, holding that the record did not reveal that the appellant raised the cumulative-error argument to the circuit court or move for a new trial on the same grounds. *Dillon II*, 317 Ark. at 394, 877 S.W.2d at 920–21.

Affirmed.

VIRDEN and BARRETT, JJ., agree.

*Cadell Reynolds, P.A.*, by: *Josie N. Graves*; and *Brian G. Brooks, Attorney at Law, PLLC*, by: *Brian G. Brooks*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Adam Jackson*, Ass't Att'y Gen., for appellee.

---

[2]Justice Corbin highlighted this point in his dissent. *Dillon I*, 311 Ark. at 542, 844 S.W.2d at 950 (Corbin, J., dissenting).