Cite as 2023 Ark. App. 242

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CR-22-422

| | | |
|---|---|---|
| CHARLES BURNETT | | Opinion Delivered April 26, 2023 |
| | APPELLANT | APPEAL FROM THE CONWAY COUNTY CIRCUIT COURT [NO. 15CR-20-34] |
| V. | | |
| | | HONORABLE JERRY DON RAMEY, JUDGE |
| STATE OF ARKANSAS | | |
| | APPELLEE | AFFIRMED |

**WENDY SCHOLTENS WOOD, Judge**

Charles Burnett appeals the Conway County Circuit Court's sentencing order convicting him of robbery and second-degree battery and sentencing him as a habitual offender to an aggregate term of forty-two years' imprisonment. On appeal, Burnett challenges the sufficiency of the evidence supporting the robbery conviction,[1] and he contends that he was deprived of a fair trial because the prosecuting attorney made improper comments during closing argument. We affirm.

On June 2, 2020, the State charged Burnett by amended information with aggravated robbery and second-degree battery. At his trial in March 2022, the evidence showed that on January 22, 2020, Burnett attacked sixty-five-year-old William Plummer in his home in

---

[1]Burnett does not challenge his battery conviction on appeal.

Hattieville. Plummer knew Burnett's family, and Burnett and his sister sometimes visited Plummer's home. Plummer had never had problems with Burnett until the night of the attack.

Plummer testified that he was asleep when Burnett knocked on the door at around 10:30 p.m. Plummer let Burnett inside, and they went into the kitchen. Burnett had left a knife at Plummer's home and asked Plummer for it. Plummer gave Burnett the knife and said the next thing he knew Burnett was charging at him with the knife raised and a hateful look in his eyes. Plummer grabbed Burnett's hand holding the knife, wrestled him to the ground, and held him until Plummer thought Burnett had had enough. When Plummer let him up, Burnett still had the knife, and he demanded the title to Plummer's truck. Plummer said he thought that he was going to die, so he did what Burnett requested. Plummer testified that as they walked to Plummer's bedroom, where he kept the title in a file cabinet, Burnett was right behind him, pushing and shoving him. Plummer thought he felt the heel of the knife against his back and said he thought Burnett was going to stab him with it at any minute. While Plummer was looking for the truck title, Burnett hit him on the head, rendering Plummer unconscious. Plummer awoke dazed an hour later. His room was torn up, and blood and papers were everywhere. He could not find his cell phone to call the police, so he went to a neighbor's house for help. Plummer's cell phone was never found despite efforts by police to locate it. Plummer testified that his truck title was not taken.

Plummer stated that he did not know why Burnett had attacked him or why Burnett wanted the truck title, but Plummer surmised it was because Burnett did not have a vehicle

2

of his own and was constantly getting rides from other people. On cross-examination, in an effort to show that Burnett fought with Plummer because Burnett was mad at Plummer for reasons unrelated to the truck title, Plummer was asked about an incident when Plummer had embarrassed Burnett's twelve-year-old niece, MC. Plummer described an occasion when he walked into a school gym where MC was watching a basketball game with friends, he sat down amid the girls, and he told MC that her mother—who had asked Plummer to retrieve MC—was waiting in the car and wanted MC to leave the game. Burnett's attorney also questioned Plummer about a statement in his medical records from the night of the attack wherein it seemed Plummer related Burnett's attack to the school-gym incident involving MC. Plummer testified that he did not remember making the statement at the hospital about the incident with MC.

Testimony and medical records showed that Plummer suffered serious injuries from the attack, including deformity of the left side of his face and multiple fractures that required surgery. Chief Deputy Jeremy Kissire with the Conway County Sheriff's Office photographed Burnett's hands following his arrest the day after the attack. Burnett's knuckles and fingers were bruised, cut, and swollen, and there was an apparent knife wound on his right hand.

At the conclusion of the evidence, the jury convicted Burnett of the lesser-included offense of robbery and of second-degree battery and sentenced him to thirty years' imprisonment and twelve years' imprisonment respectively, to run consecutively. The circuit court entered its sentencing order, and this appeal followed.

For his first point on appeal, Burnett challenges the sufficiency of the evidence supporting his robbery conviction. He concedes that he used physical force against Plummer in the attack, but Burnett argues that the evidence was insufficient to prove that he did so with the purpose of committing theft, as required by Arkansas Code Annotated section 5-12-102(a) (Repl. 2013). Burnett contends that the State's evidence did not exclude the reasonable hypothesis that he employed force solely because he was angry with Plummer. He further contends that evidence of intent is lacking because the truck title was not taken and because there was no evidence that Burnett ever possessed or used Plummer's cell phone.

The State argues that Burnett did not preserve this issue for appeal because, when moving for a directed verdict on aggravated robbery,[2] he did not specify that the evidence of his purpose to commit theft was insufficient. The State asserts that Burnett argued only that the State failed to prove that a theft occurred; therefore, his arguments regarding intent are barred because they are being raised for the first time on appeal.

While Burnett did not use the words "intent" or "purpose" when making his directed-verdict motions at trial, Burnett challenged that element by arguing that "while there was an altercation, I don't think that the altercation was dealt around this robbery." He also argued that the fight would have occurred without the robbery. Although Burnett's motion for

---

[2]A directed-verdict motion challenging the sufficiency of proof of an element of aggravated robbery, if adequate under Arkansas Rule of Criminal Procedure 33.1, will preserve the argument as to the lesser-included offense of robbery. *Davis v. State*, 362 Ark. 34, 37–39, 207 S.W.3d 474, 477–79 (2005).

4

directed verdict was not artful as to lack of intent of theft, we hold that it was adequate to inform the circuit court of the grounds of the motion and to preserve his first point on appeal.

When reviewing a challenge to the sufficiency of the evidence, this court considers only the evidence supporting the verdict to determine whether it is substantial. *Green v. State*, 79 Ark. App. 297, 300, 87 S.W.3d 814, 816 (2002). Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Id.* at 300, 87 S.W.3d at 816. This court views the evidence and all reasonable inferences deducible from it in the light most favorable to the verdict, without weighing it against conflicting evidence that may be favorable to the appellant. *Dail v. State*, 2013 Ark. App. 184, at 2. Circumstantial evidence may provide a basis to support a conviction, but it must be consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *Curtis v. State*, 2023 Ark. App. 216, at 5, ___ S.W. 3d ___, ___. Whether the evidence excludes every other hypothesis is left to the jury to decide. *Id.* Further, the credibility of witnesses is an issue for the jury, not the court; the trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id.*

Arkansas Code Annotated section 5-12-102(a) provides, in pertinent part, that "[a] person commits robbery if, with the purpose of committing . . . theft . . . the person employs or threatens to immediately employ physical force upon another." A person acts purposely with respect to his or her conduct or a result of his or her conduct when it is the person's conscious object to engage in conduct of that nature or to cause the result. Ark. Code Ann.

§ 5-2-202(1) (Repl. 2013). A criminal defendant's intent or purpose may be inferred from the circumstances of the crime. *Muncy v. State*, 2011 Ark. App. 790, at 3.

We hold that there was substantial evidence that Burnett employed or threatened to immediately employ physical force against Plummer with the purpose of committing theft. Shortly after Burnett entered Plummer's home, Burnett began to attack Plummer with a knife. During the attack, Burnett, while still wielding the knife, demanded the title to Plummer's truck and marshalled him into the bedroom with the knife at his back to get the title. While Plummer was attempting to comply with Burnett's demand for the title, Burnett beat Plummer until he was unconscious. This evidence supports the reasonable inference that Burnett possessed the requisite intent to commit theft when he employed or threatened physical force against Plummer.

We acknowledge Burnett's argument that there was evidence that he went to Plummer's home and beat him because Burnett was angry with Plummer. However, it was up to the jury to weigh the evidence and to resolve any conflicting or inconsistent testimony or evidence. *Curtis*, 2023 Ark. App. 216, at 5, ___ S.W.3d at ___. Moreover, whether the evidence excluded Burnett's proposed alternative reasonable hypothesis was also for the jury to decide. *Id.*

That Plummer's truck title was not taken in the attack and that Burnett was never found in possession of Plummer's phone or shown to have used it do not render insubstantial the evidence of Burnett's intent to commit theft by the threat or use of physical force. The focus of the offense of robbery is not on the unauthorized taking of property, but

6

on the threat of physical harm to the victim. *Clark v. State*, 2019 Ark. App. 455, at 6, 588 S.W.3d 64, 67. No actual transfer of property had to take place to prove Burnett's intent. *Campbell v. State*, 2019 Ark. App. 297, at 7, 577 S.W.3d 729, 733. We hold that substantial evidence supports Burnett's robbery conviction.

For his second point on appeal, Burnett argues that the circuit court abused its discretion by failing to order a mistrial or admonish the jury to disregard several remarks that the State made during closing arguments in both the guilt and sentencing phases of trial. Burnett contends that in the guilt phase of trial, the State improperly commented on his Fifth Amendment right to remain silent. He further contends that during the sentencing phase of trial, the State argued facts that were not in evidence and made several remarks that reflected the opinions of the prosecuting attorney and that were designed to inflame the jury and appeal to their passions.

A review of the record demonstrates that Burnett failed to object to any of the comments that he asserts are improper. Burnett acknowledges that he made no objections to the remarks during the State's closing arguments; however, he contends that this court can reach the argument under the third exception to the contemporaneous-objection rule in *Wicks v. State*, 270 Ark. 781, 606 S.W.2d 366 (1980).

To preserve an issue for appeal, a defendant must object at the first opportunity. *Tiarks v. State*, 2021 Ark. App. 325, at 11, 633 S.W.3d 788, 796. Issues raised for the first time on appeal, even constitutional ones, generally will not be considered. *Witherspoon v. State*, 2020 Ark. App. 468. In *Wicks*, the supreme court recognized four exceptions to this

7

rule. The third exception concerns issues for which the circuit court had a "duty to intervene, without an objection, and correct a serious error either by an admonition to the jury or by ordering a mistrial." 270 Ark. at 786, 606 S.W.2d at 369. Since the decision in *Wicks*, however, the supreme court has said this exception "is limited to only those errors affecting the very structure of the criminal trial, such as the fundamental right to a trial by jury, the presumption of innocence, and the State's burden of proof." *White v. State*, 2012 Ark. 221, at 10, 408 S.W.3d 720, 726. *Wicks*'s exceptions to the contemporaneous-objection rule are "rarely applied." *Roberts v. State*, 2023 Ark. App. 115, at 12, ___ S.W.3d ___, ___ (quoting *Anderson v. State*, 353 Ark. 384, 398, 108 S.W.3d 592, 600–01 (2003)). And this court has specifically held that the third *Wicks* exception is not applicable to prosecutorial errors in closing argument. *Id.*, ___ S.W.3d at ___ (citing *Tiarks*, 2021 Ark. App. 325, at 11–12, 633 S.W.3d 788, 796). This is true even when it is argued that the prosecutor improperly commented on a defendant's constitutional right to remain silent. *Chunestudy v. State*, 2012 Ark. 222, at 7, 408 S.W.3d 55, 61.

This authority is directly contrary to Burnett's argument that the *Wicks* exception applies in his case. Therefore, we hold that the third *Wicks* exception is not applicable to the prosecutorial remarks challenged here. Because Burnett's attorney made no contemporaneous objections to the remarks, his second point on appeal is not preserved, and we must affirm.

Affirmed.

HARRISON, C.J., and GLADWIN, J., agree.

8

*Robert M. "Robby" Golden*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Karen Virginia Wallace*, Ass't Att'y Gen., for appellee.