Cite as 2023 Ark. App. 403

# ARKANSAS COURT OF APPEALS
## DIVISION III
### No. CR-22-377

| | | |
|---|---|---|
| MICHAEL DAVIS | | Opinion Delivered September 27, 2023 |
| | APPELLANT | |
| | | APPEAL FROM THE LONOKE COUNTY CIRCUIT COURT [NO. 43CR-21-489] |
| V. | | |
| STATE OF ARKANSAS | | HONORABLE BARBARA ELMORE, JUDGE |
| | APPELLEE | |
| | | AFFIRMED |

## BART F. VIRDEN, Judge

A Lonoke County jury convicted appellant Michael Davis of negligent homicide, and he was sentenced to serve one year in the county jail and ordered to pay a $1,000 fine. On appeal, Davis argues that the trial court erred in refusing to give non-model jury instructions on the definition of "negligently" and on the so-called *Graham v. Connor* standard.[1] Davis also argues that the trial court erred in not admitting all opinions by his expert witness. We affirm.

### I. *Background*

On June 22, 2021, seventeen-year-old Hunter Brittain and two of his friends were replacing the transmission in Brittain's pickup truck at Mahoney's Body Shop in Cabot.

---

[1]*Graham v. Connor*, 490 U.S. 386 (1989).

Around 3:00 a.m., Brittain and one of his friends took the truck for a test drive while the second friend stayed at the shop. Among other problems, the truck would not shift into "park," which prompted Brittain to place a jug of coolant behind the truck's tire while they added some transmission fluid. They were on their way back to the body shop when Davis, then a sergeant with the Lonoke County Sheriff's Office, noticed that the truck was smoking and making a "loud racket." Davis suspected that the truck might have been stolen, but he "ran the plates" and there was no such report. Davis activated his blue lights to conduct a stop after an improper lane change. Davis initially thought that Brittain was going to flee because he heard the truck's engine being revved, but then Brittain turned left into Mahoney's driveway. Davis radioed dispatch that he was pulling into Mahoney's for a traffic stop. Twenty-three seconds later, Davis radioed, "Shots fired."

According to Davis, before he could put his patrol truck into "park," Brittain had opened the driver's door and begun reaching into the bed of the truck. Also, Davis saw that Brittain's truck was rolling backward toward his patrol truck. Davis said that he fired one shot and that Brittain's hands flew out of the bed of his truck. Davis then saw that Brittain had been holding a blue jug of what was later determined to be coolant. Davis testified that he thought Brittain had been reaching for a rifle. Davis also claimed that he had been shouting commands that Brittain remain in the truck and then that he show his hands, but

that Brittain did not acknowledge his directives. According to the passenger in Brittain's truck, Davis did not yell any commands until after the shot had been fired. [2]

The jury was instructed on both manslaughter and negligent homicide as well as on the defense of justification with respect to the charge of manslaughter. The jury acquitted Davis of manslaughter but found him guilty of negligent homicide.

## II. *Discussion*

## A. Non-Model Jury Instructions

A party is entitled to a jury instruction when it is a correct statement of the law and when there is some basis in the evidence to support giving the instruction. *Keesee v. State*, 2022 Ark. 68, 641 S.W.3d 628. An appellate court will not reverse the trial court's decision to give or reject an instruction unless the court abused its discretion. *Id.* When the trial court determines that the jury should be instructed on an issue, the model criminal instruction must be used unless the court concludes that it does not accurately state the law. *Id.* A non-AMI Criminal 2d instruction should be given only when the trial court finds that the AMI Criminal 2d instruction does not state the law or that AMI Criminal 2d does not contain a needed instruction on the subject. *Clark v. State*, 374 Ark. 292, 287 S.W.3d 567 (2008). Just because an appellant's proffered instructions contain correct statements of the law does not mean that the trial court erred in refusing to give them. *Id.*

---

[2]Davis activated his body camera after the shooting had occurred.

Davis first argues that the trial court erred in refusing his proffered definition of "negligently" in connection with the charge of negligent homicide. A person commits negligent homicide if he negligently causes the death of another person. Ark. Code Ann. § 5-10-105(b)(1) (Repl. 2013). The statutory definition of "negligently" provides that "[a] person acts negligently with respect to attendant circumstances or a result of his conduct when the person should be aware of a substantial and unjustifiable risk that the attendant circumstances exist or that the result will occur." Ark. Code Ann. § 5-2-202(4)(A) (Repl. 2013). "The risk must be of such a nature and degree that the actor's failure to perceive the risk involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation considering the nature and purpose of the actor's conduct and the circumstances known to the actor." Ark. Code Ann. § 5-2-202(4)(B). In his proffered instruction, Davis substituted the term "a reasonable Law Enforcement Officer" for "a reasonable person."

The model jury instruction on negligent homicide that was read to the jury provides, in relevant part, the following:

> The term "negligently" as used in this criminal case means more than it does in civil cases. To prove negligence in a criminal case the State must show beyond a reasonable doubt that Michael Davis should have been aware of a substantial and unjustifiable risk that the death would occur. The risk must have been of such a nature and degree that his failure to perceive it, considering the nature and purpose of his conduct and the circumstances known to him, involved a gross deviation from the standard of care that a reasonable person would have observed in his situation.

Because the model instruction tracked the language of the statute, it was a correct statement of the law. We note that there is no special section in the Criminal Code on

4

negligent homicide when it is committed by a law enforcement officer and that there is no separate definition for the state of mind "negligently" when a law enforcement officer is involved. We cannot say that the trial court abused its discretion in refusing to give Davis's proffered instruction when the instruction that was given accurately stated the law.

Second, Davis argues that the trial court erred in rejecting his proffered non-model jury instructions with regard to the use of deadly force by law enforcement officers, i.e., the justification defense. He argues that the trial court's failure to give his instructions based on the *Graham v. Connor* standard improperly eliminated any consideration of the perspective of a law-enforcement officer on the scene.[3] Davis's proposed instructions on the *Graham v. Connor* standard were proffered only in connection with the charge of manslaughter, of which Davis was acquitted. Because Davis did not seek a justification instruction with respect to negligent homicide, his argument is not preserved for appellate review. *Porter v. State*, 358 Ark. 403, 191 S.W.3d 531 (2004).

B. Admission of Expert Testimony

---

[3]*Graham, supra,* was a § 1983 civil-rights action, in which the United States Supreme Court held that all claims that law enforcement have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other "seizure" of a free citizen are properly analyzed under the Fourth Amendment's "objective reasonableness" standard rather than under a substantive-due-process standard. *Id.* at 395. The Supreme Court also said that "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . . The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97.

We review the admission of expert testimony under an abuse-of-discretion standard. *Tiarks v. State*, 2021 Ark. App. 325, 633 S.W.3d 788. To qualify as an abuse of discretion, the trial court must have acted improvidently, thoughtlessly, or without due consideration. *Id.* Moreover, we will not reverse a trial court's evidentiary ruling absent a showing of prejudice. *Clark v. State*, 2012 Ark. App. 496, 423 S.W.3d 122. The test for admissibility of expert testimony is whether it will aid the trier of fact in understanding the evidence or in determining a fact in issue. Ark. R. Evid. 702. Where the introduction of expert testimony would invade the function of the jury or where it does not help the jury, the testimony is not admissible. *Laswell v. State*, 2012 Ark. 201, 404 S.W.3d 818.

Glyn Corbitt, Davis's expert, a use-of-force analyst and law enforcement instructor/consultant, submitted an initial report in which he stated his opinion that Davis did not commit the offense of manslaughter. The State filed a motion in limine to exclude Corbitt's initial report and anticipated testimony because his opinion would invade the province of the jury. Corbitt then submitted a supplemental report in which he again referred to the charge of manslaughter, but his report also discussed Davis's training with respect to approaching a stopped vehicle, the use of force, and the objective-reasonableness standard outlined in *Graham*. The supplemental report was limited to Corbitt's opinion that Davis had adhered to the training that he had received.

The trial court permitted Davis to introduce Corbitt's supplemental report but would not allow him to introduce Corbitt's initial report because it went beyond his opinion whether Davis had followed the proper procedure and, instead, touched on the ultimate

6

issues of reasonableness and the appropriateness of the charges. Davis argues that the trial court erred in not admitting all of Corbitt's opinions. Because Corbitt's initial report and his anticipated testimony mandated a legal conclusion and told the jury how to resolve factual questions, we hold that the trial court did not abuse its discretion in excluding them. If the opinion testimony mandates a legal conclusion or "tells the jury what to do," the testimony should be excluded. *Rodgers v. State*, 2022 Ark. App. 388, 654 S.W.3d 68. In any event, Davis cannot show prejudice from the ruling excluding Corbitt's initial report and anticipated testimony given that he was ultimately acquitted of manslaughter. *See Carr v. State*, 2023 Ark. App. 345, 669 S.W.3d 854.

Affirmed.

ABRAMSON, J., agrees.

HIXSON, J., concurs.

**KENNETH S. HIXSON, Judge, concurring**. I agree with the majority that this case must be affirmed based on the applicable laws enacted by our legislature and the Arkansas Model Jury Instructions that track the language of those statutes. I write this concurring opinion to express my position that the legislation could, and perhaps should, be more fully developed to account for the situation—as is the case here—of a law enforcement officer acting in the line of duty making *split-second life-changing decisions.*

I acknowledge that Davis's arguments regarding the jury instructions rely on *Graham v. Connor*, 490 U.S. 386 (1989), which was a civil case brought under 42 U.S.C. § 1983 for the alleged deprivation of constitutional rights due to excessive police force. In *Graham*, the

7

Supreme Court held that a civil constitutional excessive-force claim arising from an arrest or investigatory stop is properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right to be secure in their persons against unreasonable seizures of the person. The *Graham* court went on to state that the "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. The Supreme Court wrote further:

> The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

*Graham*, 490 U.S. at 396–97.

Davis asserts that *Graham* differentiates between when a police officer is justified in using force as opposed to a normal citizen. Davis, however, acknowledges that state law governs criminal prosecutions and that *Graham* involved an officer's civil liability for deprivation of Constitutional rights. But Davis asserts that, along the lines of the Supreme Court's reasoning in *Graham*, the reasonableness of the conduct in a criminal prosecution of a police officer should be evaluated not from the prospect of a reasonable civilian but rather from the prospect of a reasonable police officer similarly situated. Davis makes a valid point: If an officer's conduct is judged from the perspective of a reasonable officer in a civil case where only money damages are involved, should this standard not apply equally in a criminal case when an officer's liberty is at stake?

The jury convicted Davis of negligent homicide, and as the majority opinion states, the model instruction given by the trial court was a correct statement of the law. The jury instruction, AMI Crim. 2d 1005, is structured from the definition of "negligently" as defined by Ark. Code Ann. § 5-2-202(4) (Repl. 2013). And that definition makes no differentiation between the conduct of a normal citizen and the conduct of a police officer. Davis asked to have the language in the model instruction modified from "a gross deviation from the standard of care that a *reasonable person* would have observed in his situation," to "a gross deviation from the standard of care that a *reasonable law enforcement officer* would have observed in his situation." I cannot conclude that the trial court abused its discretion in denying Davis's requested modification because the model instruction given by the trial court accurately stated the law, and the modification would have added a provision not found in the instruction.

The State argues that Davis's proposed modification is a moot point because the model instruction states that the standard of care is judged from what a "reasonable person would have observed *in his situation*," and in this case, Davis's situation was that of a police officer making a traffic stop. However, I beg to disagree. There are two contrasting jury instructions that come into play here. First, the jury is instructed that the jury is "to apply the law as contained in these instructions to the facts and render your verdict upon the evidence and the law." *See* AMI Crim. 2d 101(c). Then, in virtually the next breath, the jury is instructed that arguments of counsel "are not evidence but are made only to help you in understanding the evidence *and the applicable law*." *See* AMI Crim. 2d 101(f). The appellant's

9

closing argument that the jury should view the defendant's conduct as "a reasonable person would have observed in his situation" (which the jury could ignore) does not carry the same weight as the judge instructing the jury to view the defendant's conduct—as a matter of law—as "a reasonable law enforcement officer would have observed in his situation." Those are strikingly different statements that could affect a jury of his peers in deliberations.

I further agree with the majority's holding that Davis's proposed jury instruction on justification is not preserved for review because, although justification was raised as a defense to manslaughter, it was not raised as a defense to negligent homicide. However, I submit that, even had this issue been preserved, we would likely be constrained to affirm on this issue as well. The model jury instruction, AMI Crim. 2d 708, derives directly from Ark. Code Ann. § 5-2-610(b)(2) (Repl. 2013) and states that a law enforcement officer may use deadly physical force upon another person when he reasonably believes that it is necessary to defend himself from what he reasonably believes to be the use or immediate use of deadly force. Although Davis contends that language should be added to this model instruction to the effect that the reasonableness of an officer's actions must be judged from the perspective of a reasonable officer, he is again asking for an additional provision that is simply not included in the statute as enacted.

Our supreme court has stated that there is no better settled rule in criminal jurisprudence than that criminal statutes must be strictly construed and pursued. *Smith v. State*, 352 Ark. 92, 98 S.W.3d 433 (2003). The courts cannot, by construction or intendment, create offenses under statutes that are not in express terms created by the

10

legislature.  *Id.*  Nothing is taken as intended that is not clearly expressed, and it would violate the accepted canons of interpretation to declare an act to come within the criminal laws of the State merely by implication.  *Id.*

Because the statutes relevant to this case, as written, do not specifically contemplate the perspective of a reasonable police officer in assessing the conduct of the officer charged with a homicide committed when the officer was acting in the line of duty, I invite the legislature to revisit its legislation in this regard.  There can be no doubt that a police officer is in a markedly different position of heightened awareness than that of the normal citizen when the officer is carrying out his or her duties to investigate suspicious activity and confront those who may pose an immediate danger to the officer's personal safety as well as the safety of others.  However, because the jury instructions given by the trial court in this case are accurate model instructions based on the law as it currently stands, I agree there was no error committed by the trial court.  For these reasons, I concur in the affirmance of Davis's conviction for negligent homicide.

*Robert A. Newcomb*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Joseph Karl Luebke*, Ass't Att'y Gen., for appellee.

11