Cite as 2024 Ark. App. 580

# ARKANSAS COURT OF APPEALS
DIVISION I
No. CR-23-813

| | | |
|---|---|---|
| RICHARD NEWTON | | Opinion Delivered November 20, 2024 |
| | APPELLANT | |
| | | APPEAL FROM THE FRANKLIN COUNTY CIRCUIT COURT, SOUTHERN DISTRICT [NO. 24CCR-22-2] |
| V. | | |
| STATE OF ARKANSAS | | HONORABLE JAMES DUNHAM, JUDGE |
| | APPELLEE | |
| | | AFFIRMED |

**CINDY GRACE THYER, Judge**

Appellant Richard Newton was convicted by a Franklin County jury of one count of residential burglary, a Class B felony, and one count of misdemeanor theft of property with a value of less than $1000; he was sentenced to ten years in the Arkansas Division of Correction. On appeal, he does not challenge the sufficiency of the evidence supporting his conviction; instead, he argues that the circuit court erred in refusing to allow him to testify about a conversation he purportedly had with the Franklin County Sheriff. We find no error and affirm.

Newton and his ex-wife, Amber, married in 2011 and purchased a house together. When they divorced in 2016, Amber was awarded the house. As a result, she refinanced the house in her name only and obtained a new deed without Newton's name. Although

divorced, Newton and Amber maintained an "off and on" romantic relationship until October 22, 2021. On October 23, they were involved in an altercation that led to Newton's arrest[1] and the issuance of a no-contact order that forbade him from communicating with or being around Amber or her family members. After the October 23 incident, Amber placed padlocks on every entrance to her property to prevent his entry.

On December 21, Amber and her daughters left for an out-of-state vacation. When they returned home on December 27, Amber could tell that someone had been in her house: the door was unlocked, a laundry bag had been left in her laundry room, and someone had made coffee and hot chocolate. Amber checked her security-system footage and saw Newton's truck arriving and departing her house on December 25 and 26. Other video footage showed Newton inside the house. Amber found that numerous items were missing from the house when she returned from vacation, including keys to the padlocks that she had placed around the house after Newton was arrested. At trial, Amber introduced a list of the missing property along with her estimates of its value.

After the State rested, Newton testified on his own behalf. After describing his version of the events of October 23, he acknowledged the no-contact order. He explained that he drove past Amber's house because he was working on a house down the road and because he had a horse at her place that he wanted to check on. He said that some of the things that

---

[1]Newton was charged with misdemeanor assault in a separate criminal case that was tried at the same time as the residential-burglary and theft charges. He was convicted on that count and sentenced to thirty days in the county jail; however, he did not appeal from that conviction.

were taken out of the pasture behind the house were his, and he had not intended to harass Amber; instead, he was trying to go by when he would not see her so he would not get in trouble.

When he was asked why he was seen on the security video in Amber's driveway, Newton began to testify that days before Amber left for vacation, he called the sheriff to ask permission; however, counsel redirected him, asking why his vehicle was in her driveway. Newton said that he was getting some of his things, including his tools. The following exchange then occurred:

Q:     Did you have occasion to contact the sheriff of Franklin County?

A:     Yes.

Q:     And based on the conversation you had with the sheriff of Franklin County, did you do something?

A:     Yes.

Q:     All right. . . . What is the thing you did as a result of your conversation with the sheriff of Franklin County?

A:     I waited until they were gone and I got my things.

Newton admitted that he had been captured on the security video, but he said he didn't think he was doing anything wrong.

Newton claimed that the main reason he went into Amber's house was to find his glasses and some of his other belongings. He explained that he took the keys to the padlocks so he could go in and out without having to cut the locks. Defense counsel inquired further about that point:

3

Q:      Now, she mentioned something about--her testimony was that . . . you were looking under pillows outside, possibly to try to find the keys to the padlocks. What's your response to that?

A:      No. I think that she was referring to--well, whenever I came back to--because I came multiple days while they were on vacation; I had already planned on--you know, me and the--I got permission from the sheriff.

At that point, the State objected to Newton's claim that he got permission "from the sheriff or somebody that's not here today." Defense counsel replied, "All right," and the court instructed the jury to disregard Newton's comment regarding permission from the sheriff.

Newton continued discussing the property he was alleged to have taken, saying some of it was his and some of it he simply did not take. His attorney then asked him about eating food out of the refrigerator, and he said, "I thought I had permission to go to the house." Again, the State objected:

STATE:      Judge, I'm--

COURT:      Counsel, approach, please. [Defense counsel], [d]id you tell the defendant about the rule?

DEFENSE:    I did.

COURT:      Okay.

DEFENSE:    All right.

COURT:      So is the defendant just--

DEFENSE:    Well, he's just--

COURT:      --defiantly--

DEFENSE:    --he just keeps talking.

4

COURT:      Okay.

DEFENSE:    All right. I'd ‑‑I'll be glad to visit with him again.

COURT:      Well, no. I'll instruct‑‑

DEFENSE:    All right.

COURT:      ‑‑I mean, because it's‑‑Okay.

Ladies and gentlemen of the jury, you will disregard the defendant's statement in regards to thinking that he had permission to go to the house. That's a statement that has to be excluded‑‑to be disregarded by you in all of your deliberations.

DEFENSE:    Richard, look at me. All right. You've testified the reason you went to the house, right?

NEWTON:     Yes.

DEFENSE:    All right. And your testimony is that it was based on a conversation you had with the sheriff, right?

NEWTON:     Yes.

DEFENSE:    Well, don't mention any aspect of that conversation, because that is hearsay.

NEWTON:     Okay.

On cross-examination, Newton testified that he was simply trying to get some of his property back and went to Amber's house when he knew she would not be home. He said that he had researched how to get his belongings back and, once again, said he had called the sheriff. He repeatedly stated that he thought it was okay to be in Amber's house "based on the conversation."

5

After Newton rested, the jury convicted him of residential burglary and theft of property of less than $1000. He was sentenced to a total of ten years in the Arkansas Division of Correction. The sentencing order was entered on May 22, 2023, and Newton filed a timely notice of appeal.

On appeal, Newton challenges his conviction for residential burglary, arguing that the circuit court erred in "refusing to allow [him] to testify about his conversation with the sheriff that led him to believe he could enter his former marital home to get his property." Newton raises two main points. First, he contends that the statement was not hearsay because it was not being offered for the truth of the matter asserted but instead to show the basis for his actions in entering Amber's home. Second, he argues that if the testimony had been allowed, it would have negated the *mens rea* of the offense of residential burglary, which requires that a person "enter[] or remain[] unlawfully in a residential occupiable structure of another person with the purpose of committing in the residential occupiable structure any offense punishable by imprisonment." Ark. Code Ann. § 5-39-201(a)(1) (Supp. 2023).

As is apparent from the colloquies set forth above, however, Newton failed to object to the court's ruling on the State's hearsay objection, A contemporaneous objection is generally required to preserve an issue for appeal. *Curtis v. State*, 2015 Ark. App. 167, 457 S.W.3d 700. Issues raised for the first time on appeal, even constitutional ones, generally will not be considered. *Chandler v. State*, 2024 Ark. App. 260, 688 S.W.3d 170; *Burnett v. State*, 2023 Ark. App. 242, 665 S.W.3d 283.

Newton nevertheless argues that this court should consider his arguments because his case "fits the narrow parameters of what is known in Arkansas as the third and fourth *Wicks* exceptions." In *Wicks v. State*, 270 Ark. 781, 606 S.W.2d 366 (1980), the supreme court approved four limited exceptions to the contemporaneous-objection rule to preserve an issue for review: (1) a circuit court's failure to bring a matter essential to consideration of the death penalty to the jury's attention; (2) when an error is made by the circuit court when counsel has no knowledge of the error; (3) when the circuit court has a duty to intervene and correct flagrant and highly prejudicial errors; and (4) under Arkansas Rule of Evidence 103(d), which states that appellate courts are not denied review of errors affecting substantial rights regardless of whether they were brought to the attention of the circuit court. Our case law is clear that *Wicks* presents only narrow exceptions that are to be rarely applied. *Chunestudy v. State*, 2012 Ark. 222, 408 S.W.3d 55.

Newton asserts that the third and fourth *Wicks* exceptions should be applied in this appeal because the circuit court's alleged erroneous application of the hearsay rules deprived Newton of his due-process right to present a defense. This court, however, has consistently refused to apply the *Wicks* exceptions to hearsay testimony when a proper objection was not raised at trial. *See Compton v. State*, 2023 Ark. App. 587, at 13, 682 S.W.3d 348, 356 (citing *Johnson v. State*, 289 Ark. 589, 715 S.W.2d 441 (1986)); *Mahomes v. State*, 2013 Ark. App. 215, at 9, 427 S.W.3d 123, 129 (refusing to apply third or fourth *Wicks* exception when "there was a simple failure to make a contemporaneous objection at trial").

Moreover, it does not go unnoticed that Newton actually agreed with the State and the circuit court's ruling that the testimony was hearsay. An appellant "cannot agree to the [circuit] court's disposition of an issue on appeal and then on appeal argue that the [circuit] court erred in doing what he agreed the [circuit] court could do." *Greene v. State*, 317 Ark. 350, 359, 878 S.W.2d 384, 390 (1994).

Affirmed.

GLADWIN and HIXSON, JJ., agree.

*Debra Reece Johnson*, for appellant.

*Tim Griffin*, Att'y Gen., by: *A. Evangeline Bacon*, Ass't Att'y Gen., for appellee.